UNITED STATES, Appellee,

v.

Jewel B. FARRAR, Sergeant, U.S. Air Force, Appellant.

No. 59,862.

ACM S27611.

U.S. Court of Military Appeals.

Aug. 29, 1989.

For Appellant: *Captain Paul M. Danko-vich* (argued); *Colonel Richard F. O'Hair* (on brief); *Colonel Leo L. Sergi* and *Major William J. Reichart.*

For Appellee: *Major Carole W. Hanson* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

In March and May 1987, appellant was tried by special court-martial composed of officer members at Lackland Air Force Base, Texas. Contrary to her pleas, she was found guilty of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. She was sentenced to a bad-conduct discharge and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence. 25 MJ 856 (1988).

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY REFUSING TO ALLOW THE TESTIMONY OF MR. HUEY CALVIN LEE IN THE DEFENSE CASE AS EVIDENCE OF GOOD MILITARY CHARACTER.

We hold that no prejudicial error occurred as a result of the military judge's refusal to admit this witness' testimony.

The court below found the following facts concerning the judge's ruling:

At trial the defense tendered the testimony of Huey Calvin Lee, who, as the Deputy Director of the Alcohol and Rehabilitation Center, Wilford Hall USAF Medical Center, interviewed the appellant on 7 January 1987. Mr. Lee has a Master's Degree in social work and extensive experience with drug and alcohol abuse re-

habilitation. As the result of an intensive three hour one-on-one interview with the appellant, he came to the conclusion that she was telling the truth when she denied using cocaine. For that reason he recommended that she not be placed in the drug abuse rehabilitation program.

Mr. Lee stated that he did a "mental status examination," but did not specifically identify the methodology he used. He indicated the appellant was "slightly subdued, alert and cooperative, [and] she maintained good eyesight with appropriate responses." It was his opinion that "eye contact and [an individual's] entire mannerisms oftentime will give you good indications whether the person is very truthful with you." He detected no "defensive mechanisms" that would indicate untruthfulness or any traits that suggested drug abuse. He defended his diagnosis that the appellant was not a drug abuser by stating:

A. It's in my professional judgment, if you have a person on a one-on-one for three hours during an intense non-disturbed type confrontation, give and take, you have a pretty good indication [if that individual uses drugs]. Maybe you could not justify [that] person as a drug user, but you would get a pretty good indicator as to whether there is something going on with [that] person.

*The testimony of Mr. Lee was offered as that of an expert witness who could assist the triers of fact in determining whether the appellant had used cocaine.* Mil.R.Evid. 702. The military judge excluded the testimony holding that Lee's evaluation of the appellant was essentially an assessment of her credibility and not helpful to the factfinders.

*Id.* at 857 (emphasis added).

The military judge earlier said, *inter alia:*

Based upon all available data, Mr. Lee recommended no entry into the drug rehabilitation program. Mr. Lee stated he did not recommend entry into the program because he did not believe she was a drug abuser. Although Mr. Lee is much more experienced than a lay individual in interview techniques and making astute observations during the course of the interview, his testimony to be admissible must assist the factfinder in resolving an issue and concern matters requiring specialized knowledge. Mr. Lee's evaluation of the accused was essentially an evaluation of her credibility. Expert testimony on the issue of a person's credibility is not helpful to the factfinder. The prosecution's objection to the testimony of Mr. Lee is sustained. Mr. Lee will not be permitted to testify as an expert witness.

Appellant now concedes that Mr. Lee's testimony was not admissible to buttress her credibility. Yet she argues other portions of his testimony were admissible as evidence of good military character under Mil.R.Evid. 405(a), Manual for Courts–Martial, United States, 1984. She asserts that the judge erred in not admitting his testimony for this purpose.

------

■ The first question of importance is whether Mr. Lee's recognized expertise in drug-abuse counseling qualified him to express an opinion on appellant's status as a drug abuser. Mr. Lee testified that as part of his duties he was required to make recommendations for service members concerning placement in a drug rehabilitation program, separation, and other administrative or disciplinary action. He further testified that a recommendation of one of the above reflected his conclusion that the person was a drug abuser of some type, while a "no diagnosis" conclusion reflected his opinion that the person was not a drug abuser. He gave appellant a "no diagnosis" recommendation in January 1987. The military judge rejected this evidence as offered by the defense to show appellant did not use drugs as charged in October 1986.

We note that no scientific evidence, in the form of learned treatises or otherwise (*see generally* Mil.R.Evid. 803(18)), was

presented to the judge to justify the defense assertion as to the broad scope of a drug counselor's expertise. *Cf. United States v. Ray*, 26 MJ 468, 472 (CMA 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989). Moreover, Mr. Lee himself undermined his own claim that his expertise included such knowledge or skill as a human drug-abuse detector. *Cf. United States v. Harper*, 22 MJ 157, 161 (CMA 1986). *See* Mil.R.Evid. 702. He said:

Q. Now can you tell just by looking at a person first glance whether they use cocaine or not?

A. No.

Q. To your knowledge, is there any scientific basis in looking at a person, let's say, a politician or a business man and saying, I suspect that person to be a cocaine user? Just from an initial look at them.

A. It's in my professional judgment, if you have a person on a one on one for three hours during an intense nondisturbed-type confrontation, give and take, you have a pretty good indicator. *Maybe you could not justify this person as a drug user but you would get a pretty good indicator as to whether there is something going on with this person.*

Q. Okay, I understand that you had this three hour interview. The question I first asked is, just by looking at someone, can you automatically tell? I mean, is there one sign that says if that's present, this person is a cocaine user?

A. No, not just by looking at you, no.

Q. Okay. If you find a military member who has deteriorating duty performance, financial problems, has a poor 35-10, does that automatically mean that person is a cocaine user?

A. *No. It gives me some indications there are some things going on in his or her personal life that require a warrant for further exploration.*

Q. Isn't it true and perhaps isn't it your experience that would bear this out that perhaps you have seen in the military many people like that of whom there was no evidence they were a cocaine user and it was never determined or documented they were a drug abuser of any kind who had financial problems, 35-10, or deteriorating duty performance?

A. As a general rule, when people get to me and those factors you just mentioned are present, something is going on in their life.

Q. Is it always drug abuse?

A. *You see there is something going on in their life. Oftentime it's drug abuse. You attempt to rule out drug abuse; drug abuse be it legal or illegal.*

\*　　\*　　\*　　\*　　\*　　\*

Q. To your knowledge is there any published scientific literature which establishes how to tell by looking at someone and talking to them for three hours if they are a cocaine user or not? From those factors alone can you tell?

A. *Sir, I think we both know that's not true.* That's why you do the psychological and mental status—that's why you do the evaluations—that's why you have the person come in and be evaluated by a clinician, to rule out the possibility there may be some flaws somewhere along the line. Let's verify it. And then we would make the recommendation to the commander. The commander, whoever he or she may be, makes the final decision concerning the program entry. We only make recommendations.

(Emphasis added.) Finally, Mr. Lee virtually admitted the importance, if not the preeminence, of his personal credibility judgment in reaching his "no diagnosis" recommendation. He stated:

Q. Sir, in fact after this three hour interview, isn't it what you are telling this court—because this young lady looked you in the eye and she had a good bearing, a good rapport with you, her

mannerisms, facial expression, body language etcetera were of a certain kind—based on your experience, you believed her when she denied the use of cocaine?

A. No, that's not what I said, no.

Q. Did you disbelieve her? Let me—she did deny the use of cocaine, didn't she?

A. Yes. I frequently have people deny. If a person comes in and says, "Hey, I did use it," that surprises me.

Q. Didn't you tell this court in your direct examination that this body language—that may be the term I'm using—this eye contact, demeanor of the person, was one who gave you a good indication of truthfulness? I think those were your exact words, were they not?

A. *I don't think those were my exact words. I think those are indicators that I can use and I do look for them.*

Q. To determine whether a person is telling you the truth or not or whether they are being straight with you or candid or whatever term you want to put it?

A. I look for anxiety, signs of anxiety. I asked them very personal questions. I attempt to put them under a certain degree of stress as you are attempting to do to me now. I attempt to rule those out.

Q. What are you looking for though if you find those anxiety signs that would give you reason to believe they might be being less candid with you or less truthful, if you find that type of body language if you will? Isn't that what you were telling the court on direct examination?

A. *That could be a possibility.* If all those things are present, yes, this person is anxious—the second thing I would look at is the way I am confronted. Are they anxious as a result of my intimidating this person. I tend to look at my own behavior and then I tend to look at the person I am interviewing. I look at me first and then the person second.

(Emphasis added.) We find no abuse of discretion by the judge in his rejection of this evidence as proffered by the defense. *See generally United States v. Carter*, 26 MJ 428 (CMA 1988); *see also* Mil.R.Evid. 104(a).

■ A second question we shall address is whether Mr. Lee's testimony was admissible as evidence of good military character under Mil.R.Evid. 404(a)(1) and 405. *See generally United States v. Vandelinder*, 20 MJ 41 (CMA 1985). We note that this testimony was not offered for this purpose at trial. Mil.R.Evid. 103(a)(1); *United States v. Banker*, 15 MJ 207, 212 n. 2 (CMA 1983). Moreover, the testimony of Mr. (then Captain) Gallardo, Staff Sergeant Flowers, and Staff Sergeant Davis provided similar good-military-character evidence concerning appellant and rendered any error in this regard harmless. *See United States v. Weeks*, 20 MJ 22, 25 (CMA 1985). Finally, obvious foundational questions exist for the expression of such an opinion by Mr. Lee in light of the decision of this Court in *United States v. Jenkins*, 27 MJ 209 (CMA 1988). *Cf. United States v. Williams*, 26 MJ 487, 490 (CMA 1988).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.