UNITED STATES

v.

James D. RYDER, Boatswain's Mate,
Second Class, U.S. Coast Guard.

CGCM 0034.
Docket No. 947.

U.S. Coast Guard Court of
Military Review.

April 27, 1992.

Military Judge: (12 June 1989) CAPT
Thomas W. Snook, USCG.

Military Judge: (19 July 1989) CAPT
Philip F. Roberts, JAGC, USN.

Military Judge: (21–25 August 1989) CAPT Douglas A. Smith, USCG.

Trial Counsel: LCDR Lawrence I. Kiern, USCG.

Assistant Trial Counsel: LT Brian Schroeder, USCG.

Civilian Defense Counsel: (21–25 August 1989) Kevin Hogan, Esquire.

Detailed Defense Counsel: (12 June, 19 July and 21–25 August 1989) LT Michael Forney, JAGC, USNR.

Appellate Defense Counsel: LCDR G Arthur Robbins, USCG.

Appellate Government Counsel: LCDR Michael J. Devine, USCG.

Before Panel One, BAUM, BRIDGMAN and SHKOR, Appellate Military Judges.

BAUM, Chief Judge:

At a trial held on 12 June, 19 July and 21–25 August 1989, Appellant pled not guilty to numerous offenses before a general court-martial composed of officers and enlisted members. Despite his pleas, the court convicted Appellant of one specification of distribution of lysergic acid diethylamide (LSD) and fifteen specifications of wrongful use of controlled substances, which included marijuana, LSD and cocaine, in violation of Article 112(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a; and two specifications of solicitation of Coast Guard members to use or distribute drugs in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced to reduction to E–1, forfeiture of $699 per month for 60 months, confinement for 5 years and a dishonorable discharge. The convening authority approved the reduction and discharge as adjudged but mitigated the forfeitures to $699 per month for 36 months and the confinement to 3 years. Before this Court, Appellant briefed and orally argued the following two assignments of error:

I

IMPROPERLY INTRODUCED AND ADMITTED EVIDENCE RESULTED IN APPELLANT'S WRONGFUL CONVICTION

II

APPELLANT WAS DENIED DUE PROCESS OF LAW AND RECEIVED A DISPROPORTIONATE SENTENCE DUE TO THE MILITARY JUDGE UNDULY EMPHASIZING THE DETERRENT FUNCTION OF SENTENCING WHEN HE RESPONDED TO AN INQUIRY FROM THE MEMBERS DURING SENTENCING DELIBERATIONS

During oral argument, a motion to assign the following supplemental error was granted from the bench and briefs from appellate defense and Government were submitted:

III

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE CONSTITUTION AND ARTICLE 27, UCMJ, 10 U.S.C. § 827

*Assignment of Error I*

IMPROPERLY INTRODUCED AND ADMITTED EVIDENCE RESULTED IN APPELLANT'S WRONGFUL CONVICTION

In Assignment of Error I, Appellant contends that he was convicted as a direct result of the admission of three clusters of inadmissible evidence: (1) urinalysis test results showing tetrahydrocannabinol (THC) metabolite at levels below the Coast Guard cutoff for reporting samples as positive, accompanied by inadmissible testimony from an expert witness, (2) testimony by a second expert concerning the reliability of government witnesses who reported the use of lysergic acid diethylamide (LSD), including improper introduction of prior consistent statements by those witnesses and (3) evidence of uncharged misconduct.

## Urinalysis Test Results

The facts with respect to the urinalysis test results are that four separate urine samples, stipulated to have been provided by Appellant, were admitted in evidence without objection, along with the laboratory reports of gas chromatography/mass spectrometry (GC/MS) testing done on each sample, also admitted without objection by the defense. The director of the laboratory, Dr. Ray Liu, was qualified as an expert witness and testified that the reports showed that GC/MS testing had been conducted on all the samples and reflected THC metabolites in each of the samples at the following levels: 11.14 nanograms per milliliter, 7.58 nanograms per milliliter, 5.8 nanograms per milliliter and 7.76 nanograms per milliliter. He further testified that the procedure established by laboratory contract with the Coast Guard provides that results of GC/MS testing showing THC metabolites below 15 nanograms are reported as negative. Dr. Liu, when asked to correlate the various test results with possible marijuana ingestion on dates testified to by various witnesses, expressed the opinion that, because of the elapsed time between the observed ingestion and the testing, the nanograms of THC metabolite shown by GC/MS analysis indicated either one-time ingestion of a large quantity of marijuana or chronic use of smaller amounts. No objections were interposed to any of this testimony.

Appellant, citing *U.S. v. Arguello*, 29 M.J. 198 (C.M.A.1989) and *U.S. v. Gray*, 30 M.J. 231 (C.M.A.1990), now asserts that admission of the test results and Dr. Liu's testimony was plain error. The Government, in response, submits that admission of the urinalysis findings as well as Dr. Liu's testimony was not plain error and that any issue in this regard should be deemed waived by Appellant's failure to object at trial. The Government notes that the instant trial was held before the decisions in *U.S. v. Arguello*, supra, and *U.S. v. Joyner*, 29 M.J. 209 (C.M.A.1989), cases involving urinalysis test results below departmental cutoff levels. The Government says, however, that even considering those cases as persuasive authority on the subject, the facts here distinguish the instant case from *Arguello* and align it more closely with *Joyner*, which upheld the admission of urinalysis evidence below a level set by the Department of Defense.

While we are not convinced as to this case's similarity with *Joyner*, as seen by the Government, we do distinguish the instant facts from *U.S. v. Arguello*, supra, as well as from *U.S. v. Gray*, supra, the other decision cited by Appellant. Both of those cases were governed by Department of Defense regulations which bar disclosure or use of test results below the established level for a positive result. The Coast Guard, which is not a part of the Department of Defense, has regulations which do not expressly prevent use of test results below a certain point as corroborating evidence in a court-martial.

■ The Government notes that Coast Guard regulations do provide that only urinalysis tests showing nanograms above a certain magnitude may be used as the *sole* basis for administrative or disciplinary action. Here, while the results were below that specified level, they were used only to *corroborate* the testimony of witnesses who observed the accused smoking marijuana on specific dates. Accordingly, we find that use of this evidence did not contravene the express terms of Coast Guard regulations and did not constitute plain error. The fact that the nanograms per milliliters in each instance were below that called for in Coast Guard regulations for use as the only evidence of marijuana ingestion goes only to the weight of the evidence as corroboration, not to its admissibility. Plain error was not committed and the waiver rule applies. Appellant's assignment in this regard is rejected.

## Expert Testimony Concerning LSD

■ Appellant asserts that the testimony of a second expert witness, Dr. Sandra Jo Counts, concerning the effects of LSD served to vouch for the truthfulness of subsequent government witnesses who testified to use of LSD by Appellant, and, thus, impermissibly invaded the province of

the factfinder. Appellant also contends that this expert's testimony was improperly used as a means for introducing prior consistent statements of the government witnesses. Appellant failed to object to this testimony at trial, and the Government asserts waiver.

■ Appellant's failure to object constituted waiver. Aside from waiver, however, we consider the expert's testimony to be proper in all respects. While the opinions expressed by the expert rested on facts related to her by government witnesses, that is fairly routine with respect to expert opinion. It does not mean that the expert is vouching for the truth of the facts, simply that the expert opinion concerning LSD flowed from the asserted facts. It was left to the court to determine whether the underlying testimony was true or not. In our view, the expert was simply saying that the facts related by the witnesses, if deemed to be true, are consistent with LSD use. Appellant's assigned errors with respect to this testimony are rejected.

### Testimony of Uncharged Misconduct

As a separate matter, Appellant assigns as error that numerous instances of uncharged misconduct were related to the court by government witnesses. As before, the complained of testimony was not objected to at trial and, again, we deem the issue waived. Accordingly, Appellant's Assignment of Error I is rejected in its entirety.

### Assignment of Error II

APPELLANT WAS DENIED DUE PROCESS OF LAW AND RECEIVED A DISPROPORTIONATE SENTENCE DUE TO THE MILITARY JUDGE UNDULY EMPHASIZING THE DETERRENT FUNCTION OF SENTENCING WHEN HE RESPONDED TO AN INQUIRY FROM THE MEMBERS DURING SENTENCING DELIBERATIONS

In his second assignment of error, Appellant contends that he was denied due process of law and received a disproportionate sentence as a result of the military judge's response to an inquiry from the court members. Appellant says that the judge's statement unduly emphasized the deterrent function of sentencing. The facts relating to this assignment are that midway through sentence deliberations, the members submitted a question to the judge asking whether the court could make a written statement in conjunction with its sentence. That statement, after characterizing the accused's offenses, said:

We fervently hope that enough of the details of this and other similar cases can be extracted from the record and published so it can be available to commanding officers to use as training material. If so, perhaps the message to our people can get through that:

1) If you do things like this, in the long term you will not get away with it.

2) When you get caught, it will be a painful experience not only for you, but for others around you, including your family.

3) It can happen anywhere if the people in responsible positions don't keep their eyes and ears open and do their job.

Record of Trial Appellate Exhibit XXXIX.

Upon reading that proposed statement, the judge said to the members in open court:

Gentlemen, having closely examined Appellate Exhibit 39, I can understand your concerns and feelings that's [sic] expressed in this. However, under the circumstances, I believe it would be inappropriate to make that sort of pronouncement in the Court when you announce the sentence. I believe the content of the sentence that you announce will, by its content, convey the message that is contained in this exhibit.

Record at 1295.

The defense made no objection to this instruction, nor did it request a session out of the presence of the members to read the statement and state its position to the judge. Here, for the first time, Appellant objects to the judge's remarks and claims they led directly to a disproportionate sentence by emphasizing the deterrent function of sentencing.

Appellant contends that the plain inference to be drawn from the judge's words accompanying his ruling not to allow the court's statement was that the court should impose a severe enough sentence to communicate its message. The Government, in response, says that interpretation stretches the judge's instruction beyond its natural meaning. In the Government's view, the judge was simply telling the members that he would not allow the court to read a possibly confusing statement into the record in conjunction with the sentence. In any event, according to the Government, "[t]he defense may not sit idle if they do not concur with the procedure adopted by the Military Judge. If defense counsel deems instructions to be unclear or imprecise, there is an obligation for counsel to object or seek clarification." Government's Brief at 15. The Government submits that, assuming arguendo that somehow the judge's explanation was in error, it did not amount to plain error and the defense's failure to object waives the issue. We agree.

Moreover, we also agree with the Government's assertion that the number and nature of the offenses, in combination with the surrounding circumstances, warranted the adjudged sentence. The accused, a second class petty officer, used drugs over a substantial period of time and was also convicted of distributing LSD. Furthermore, he was senior member of his duty section and used drugs while underway in a Coast Guard boat. The maximum punishment authorized for his offenses included 68 years confinement. We agree with the Government that the sentence imposed, which includes only five years confinement, simply cannot be characterized as disproportionate. Appellant's second assignment of error is rejected.

### Assignment of Error III

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE CONSTITUTION AND ARTICLE 27, UCMJ, 10 U.S.C. § 827

In his last assignment of error, Appellant argues that he was denied effective assistance of counsel in violation of the Sixth Amendment to the Constitution and Article 27, UCMJ. In support of this contention, Appellant points to counsel's failure to object to the evidence described in Assignment of Error I as inadmissible. He also cites the defense's failure to examine the court members' proposed sentencing statement and the failure to object to the judge's instruction in that regard. Additionally, Appellant says that counsel failed to conduct any prior independent investigation of the urinalysis values and failed to cross-examine the expert witness, Dr. Liu, on the matter of the urinalysis results being less than the amounts accepted as standard test deviation, or on the possibility of innocent ingestion producing such results. Appellant also faults counsel for not calling a defense expert to explain the ambiguity of the Government's evidence. Moreover, Appellant sees the failure to submit any post-trial assignments of error to the convening authority as further indication of ineffective representation. In Appellant's view these asserted failures, taken as a whole, fall well outside the range of professionally competent assistance, and constitute ineffective representation.

Similar assertions pertaining to another counsel were addressed by this Court in the companion case of *U.S. v. Puckett*, 32 M.J. 783 (C.G.C.M.R.1991). As we stated in that case, the standard for reviewing such claims of ineffective representation is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That standard bears repeating here:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064.

The counsel errors asserted by Appellant do not meet the test of *Strickland v. Washington,* supra. In an affidavit from Appellant's civilian attorney, filed with the Court by the Government, defense counsel explains his actions as part of overall strategy that had a reasonable basis at the time. Appellant was maintaining his innocence in the face of numerous expected witnesses who would testify to the contrary. The accused planned to take the stand in his own defense, and he did just that, denying his guilt under oath. Technical objections to evidence that might have been sustained, if raised when first offered by the Government, would later prove fruitless upon that same evidence being presented as rebuttal to the accused's own testimony. In light of this conclusion, defense strategy was to forego such objections and concentrate, instead, on obtaining favorable testimony from prosecution witnesses on cross-examination. In line with this tactic, a decision was made not to attempt to discredit the government witnesses whose testimony on cross-examination might prove helpful.

We find counsel's trial and pretrial actions with respect to the charges against the accused were consistent with this strategy and not to be characterized as deficient. His actions at the sentencing stage of trial are also deemed to be reasonable. Those actions, as explained by counsel, are not considered to be errors on his part. Finally, the defense attorney's decision after trial not to submit assignments of error to the convening authority was consistent with his client's post-trial acknowledgment of guilt and desire to cooperate with the Government in an effort by the accused to obtain clemency. Counsel successfully pursued the clemency tack instead of asserting legal errors and ultimately obtained a reduction in the sentence from five years forfeitures and confinement to three years for both.

For the foregoing reasons, Appellant's third assignment of error is deemed to be without merit.

Appellant has noted that the finding of guilty of Specification 1 of Additional Charge I, which alleges that he used marijuana in or near Neah Bay on or about 30 November 1988, is not supported by the evidence. We agree. Accordingly, the finding of guilty of Specification 1 of Additional Charge I is set aside and the Specification is dismissed. The remaining findings of guilty are deemed to be correct in law and fact.

We have reassessed the sentence in light of the finding of guilty that was set aside. Upon reassessment, we find the sentence legally correct and appropriate for the remaining offenses. We are convinced on the basis of the entire record that the remaining findings of guilty and sentence should be approved. Accordingly, the remaining findings of guilty and the sentence, as approved below, are affirmed.

Judges BRIDGMAN and SHKOR concur.