UNITED STATES, Appellee

v.

James D. RYDER, Boatswain's Mate Second Class, U.S. Coast Guard, Appellant.

No. 68,449.
CMR No. 947.

U.S. Court of Military Appeals.

Argued Oct. 7, 1993.

Decided June 23, 1994.

For Appellant: *Lieutenant Commander Allen Lotz* (argued).

For Appellee: *Lieutenant Garland M. Walker* (argued).

*Opinion of the Court*

WISS, Judge:

Appellant entered uniform pleas of not guilty to an extensive laundry list of drug-

related allegations at his general court-martial comprised of officer and enlisted members. Succeeding in some instances, he nonetheless was convicted of using marijuana (11 specifications), lysergic acid diethylamide (LSD) (3 specifications), and cocaine; distributing LSD; and soliciting Coast Guard personnel to use and to distribute LSD (one specification each), in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934, respectively. The court-martial sentenced him to a dishonorable discharge, confinement for 5 years, forfeiture of $699.00 pay per month for 60 months, and reduction to the lowest enlisted grade.

The convening authority reduced the period of confinement to 3 years and of forfeitures to 36 months but in all other respects approved the trial results. The Court of Military Review set aside the finding of one of the uses of marijuana as not supported by the evidence; the court, however, affirmed the remaining findings and the sentence. 34 MJ 1077, 1082 (1992).

On appellant's petition, we granted review to consider whether "improperly introduced and admitted evidence resulted in appellant's wrongful conviction." * Appellant's complaint of evidentiary error actually involves three distinct aspects of the evidence, none of which was the object of a timely objection at trial. For the reasons discussed, *infra*, we decide that none of the three was plain error that resulted in "appellant's wrongful conviction." *See United States v. Toro*, 37 MJ 313 (CMA 1993); *United States v. Fisher*, 21 MJ 327 (CMA 1986).

I

■ Without defense objection, Dr. Ray Liu, the Government's expert toxicologist, testified that urine samples taken from appellant on January 4, 23, and 30, and March 3, 1989, each contained the metabolite for marijuana called tetrahydrocannabinol (THC). Trial counsel offered this evidence to corroborate testimony of government wit-nesses that they had seen appellant smoke marijuana on January 6 and 7 and on February 15, 1989, and testimony of witnesses that appellant had bragged about being able to beat urinalyses.

For the first time on appeal, appellant has urged that Dr. Liu's testimony was inadmissible because, in each instance, the urinalysis reflected a measure of THC below that which Coast Guard regulations treat as "positive" for its presence. He now relies upon our decision in *United States v. Arguello*, 29 MJ 198 (CMA 1989), as the legal basis of his contention. We hold that admission of this testimony was not plain error so as to overcome appellant's failure to object at trial. *See* Mil.R.Evid. 103(a)(1) and (d), Manual for Courts–Martial, United States, 1984.

A

Presence of THC in urine is measured in nanograms per milliliter (ng/ml). The laboratory that tested appellant's four urine samples reported detection of THC at the levels of 11.14, 7.58, 5.8, and 7.76 ng/ml, respectively. To put appellant's complaint into perspective, it is necessary here to give some attention to certain Coast Guard regulatory provisions.

Article 20–C–3b(2)(a) of Coast Guard Personnel Manual, Commandant Instruction M1000.6A, Change 1 (21 July 1988), instructs that "[u]rine samples which test positive for" a drug "in a screening test will be" confirmed by "using gas chromatography/mass spectrometry (GC/MS) technology." The provision continues:

A cutoff level has been established for each drug which will ensure the reliability of any finding that the drug is present in the sample. A laboratory finding by GC/MS that the drug is present at or above the cutoff level will be reported as "confirmed positive" and is evidence of drug abuse.

For the presence of THC, the "cutoff level" that is "evidence of drug abuse" is 50 ng/ml, *see* Art. 20–C–3c(4), while a "confirmed posi-

---

* Additionally, we granted appellant's petition on two issues which now have been decided against him. *See Weiss v. United States*, —— U.S. ——,

114 S.Ct. 752, 127 L.Ed.2d 1 (1994); *United States v. Carpenter*, 37 MJ 291 (CMA), *cert. pending*, No. 93–676, 62 U.S.L.W. 3411 (1993).

tive" below that level only "is evidence that THC is present in the member's system and requires investigation," *see* Art. 20–C–4c. In fact, 4c then expressly states:

It [a reading below 50 ng/ml] is not sufficient to establish a drug incident unless there is additional evidence indicating intentional use of drugs, in which case the test result may be used as corroborating evidence to establish a drug incident.

Consistent with this language, Article 20–C–5b reads:

The absence of a positive urinalysis test result, or a test result below 50 ng/ml for THC, does not preclude taking disciplinary or administrative action based on other evidence.

In sum, these provisions contemplate that a confirmed positive reading of THC at a level of 50 ng/ml or higher will, itself, support a conclusion of drug abuse, while a reading of lower than 50 ng/ml only is evidence of drug presence which does not alone support a conclusion of drug abuse, but which may be used to corroborate other evidence of intentional drug use. This scheme reflects a sliding-scale of reliability of urinalysis results that is the concern of Article 20–C–3b(2)(a), quoted earlier. *See also United States v. Arguello,* 29 MJ at 204 (purpose of requiring minimum ng/ml levels to report "positive" result "is to protect the servicemember from adverse action based on unreliable scientific testing").

The Government seeks to distinguish this case from *Arguello* on the basis that the regulation in that case did not have the second prong that the regulation here has. The Government urges that, under the regulation in issue in *Arguello,* the question of "positive" was black or white: If test results were above a prescribed level, the report was "positive"; and if they were below (or nonexistent), it was "negative." The misstep in *Arguello,* the Government points out, was that the prosecution tried to transform a report that was "negative" under the regulation into one that was "positive" by providing expert testimony that the reading nonetheless did reliably show presence of the drug. The Court of Military Review expressed this

same rationale in rebuffing appellant's claim of error. 34 MJ at 1079.

The distinction *may not be* quite so clear, however, in light of yet another Coast Guard regulatory provision, which the Court of Military Review did not expressly consider. Paragraph 6d of Commandant Instruction 5355.1A (24 February 1988) stipulates:

Samples confirmed positive by GC/MS for THC will be reported in NG/ML, if the level detected is between 20 and 49 NG/ML. THC results at or above 50 NG/ML and all other drugs will be reported as "confirmed pos[i]tive" only, indicating that the drug concentration level equals or exceeds the GC/MS minimum detection level specified for Coast Guard samples....

A possible inference from this paragraph is that a reading *below 20 ng/ml* is not to be reported "positive" *at all.* In fact, as the court below acknowledged, Dr. Liu himself "testified that the procedure established by laboratory contract with the Coast Guard provides that results of GC/MS testing showing THC metabolites *below 15 nanograms are reported as negative.*" 34 MJ at 1079 (emphasis added).

### B

It is unnecessary here, however, for us to authoritatively interpret the Coast Guard regulations set out earlier and in the process to resolve the different views of the parties. In the absence of timely objection at trial, appellant has waived any appellate complaint unless admission of the evidence was plain error. Mil.R.Evid. 103(a)(1) and (d). We said in *Fisher:* "In order to constitute plain error, the error must not only be obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations.'" 21 M.J. at 328. Without deciding whether *Arguello* controls this case, it fairly may be argued that any error here was not obvious and substantial, since the regulations in question are not so clear-cut as was the regulation in *Arguello* and since this trial occurred before our decision in *Arguello.*

In any event, we are fully satisfied that any error did not operate to appellant's substantial prejudice. Art. 59(a), UCMJ, 10

USC § 859(a). Besides the fact that this evidence was only corroborative, rather than primary, appellant forthrightly attacked the reliability of such low readings. Most importantly, however, appellant actually embraced the test results as an offensive weapon to demonstrate that appellant had *not* used *LSD or cocaine* during the relevant period, as the Government had charged. Under similar circumstances in *Toro*, we concluded: "Admission of the [evidence in question] was clearly part of the defense strategy, and it did not affect a substantial right of appellant." 37 MJ at 317. We reach the same conclusion here.

## II

■ Dr. Sandra Jo Counts testified as an expert witness for the prosecution concerning the effects of LSD. Appellant asserts for the first time on appeal that her testimony "served both as a polygraph for subsequent government witnesses, and as a vehicle to introduce prior consistent statements of those witnesses." Final Brief at 7. We hold that admission of Dr. Counts' testimony was not plain error. *See United States v. Fisher*, 21 MJ 327.

In part pertinent to this appeal, Dr. Counts stated that she had interviewed four persons who had described to her their use with appellant on certain occasions of a substance that appellant had furnished. Subsequently in the trial, all four persons testified as government witnesses and gave similar accounts to the court-martial. She opined that, assuming the witnesses were "reliable," the substance that they had taken was LSD. When asked whether she had "any reasonable or significant doubt about that conclusion," she said:

Well, only that I didn't see it. *So, I am going on the word of what people told me. But if these people are reliable and I had no reason to think that they weren't being at the time,* then I would still conclude that it was LSD.

(Emphasis added.)

This Court repeatedly has denounced use of an expert witness as a human lie detector to vouch for the credibility of another witness or the accused. *E.g., United States v. Partyka*, 30 MJ 242 (CMA 1990); *United States v. Farrar*, 28 MJ 387 (CMA 1989); *United States v. Arruza*, 26 MJ 234 (CMA 1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *United States v. Petersen*, 24 MJ 283 (CMA 1987); *United States v. Cameron*, 21 MJ 59 (CMA 1985). The character of Dr. Counts' statement regarding the credibility of her interviewees is substantially the same as the character of the testimony in issue in *United States v. Partyka, supra* at 246:

"I assume that when a patient comes to me, that they are telling the truth, and *I assume that unless I have some reason to believe otherwise. I have had no reason to believe otherwise.*"

(Emphasis added.) This Court condemned this testimony in *Partyka*, even to the point of holding it to be plain error. *Id.* at 247.

Here, however, the circumstances are different. Dr. Counts' statement arguably was not a continuing voucher for the witnesses' credibility, as was the case in *Partyka*; instead, in substance she might be heard simply to have accepted their reliability at face value for purposes of their interview. In this light, any error was not obvious and substantial.

Further, each of these witnesses later testified for themselves and thereby offered the members their own opportunity to judge the witnesses' credibility. We believe that, based on the full record, Dr. Counts' testimony did not have an unfair prejudicial impact on the members' deliberations either by vouching for the witnesses' credibility or by improperly bolstering their credibility with hearsay statements, *see* Mil.R.Evid. 801(d)(1)(B); *see also United States v. Neeley*, 25 MJ 105, 106–08 (CMA 1987) (regarding danger of "smuggling hearsay" evidence via expert testimony and danger of prejudice inconsequential when declarant later testifies to same effect), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988). Thus, appellant's failure to enter trial objections effectively waived any error. *See United States v. Fisher*, 21 MJ 327.

### III

■ While offering evidence on the twenty nine drug-related offenses charged against appellant, the prosecution's witnesses also revealed evidence of several drug-related incidents with which appellant was not charged. They involved other instances of alleged use of marijuana and other drugs, efforts to avoid detection through urinalysis by use of other chemicals in his system, ignoring drug use by other servicemembers, and attempting to persuade witnesses not to testify against him at the instant court-martial.

In this Court, appellant complains that the sole purpose of this evidence was improperly to paint his character in such a way as to lead the members to believe that he acted in conformity with that character on the occasions charged. Mil.R.Evid. 404(b). Appellant raised no similar objection at trial, however, so again his appellate cries of foul have been waived absent a finding of plain error. Mil.R.Evid. 103(a)(1) and (d). We find none. *See United States v. Fisher, supra.*

Applying the three-part test articulated in *United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989), and reiterated in *United States v. Cousins,* 35 MJ 70, 74 (CMA 1992), there would not seem to be any error at all, much less error that was obvious and substantial. The evidence of uncharged misconduct all fairly may be viewed as part of the *res gestae* of the charged offenses—closely linked to the charged offenses in time, place, and circumstance—and admissible to help explain and clarify the pattern of appellant's drug abuse and efforts to avoid detection that was reflected in the charged offenses. *See United States v. Metz,* 34 MJ 349, 351 (CMA 1992). Further, considering the extensive and varied pattern of drug-related charges facing appellant, it is difficult to imagine how evidence of a relatively small number of similar uncharged incidents could have offered a danger of unfair prejudice that would substantially outweigh the probative value of the evidence. *See* Mil.R.Evid. 403.

Additionally, there is no chance at all, in our view, that the challenged evidence had an unfair prejudicial impact on the members' deliberations. The evidence of appellant's guilt was abundant. Moreover, the members themselves capably demonstrated an ability to focus the evidence with laser-like precision on the offenses charged by acquitting appellant on nearly one-third of those offenses.

### IV

The decision of the United States Coast Guard Court of Military Review [34 MJ 1077, 1259] is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.