UNITED STATES, Appellee

v.

Frank J. FISIOREK, Airman First Class
U.S. Air Force, Appellant.

No. 93–0056.
CMR No. 28751.

U.S. Court of Appeals for
the Armed Forces.

Argued April 4, 1995.

Decided Sept. 29, 1995.

For Appellant: *James E. Nancarrow* (argued); *Colonel Jay L. Cohen* and *Captain Todi S. Carnes* (on brief).

For Appellee: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* and *Colonel Thomas E. Schlegel* (on brief).

### Opinion of the Court

COX, Judge:

1. Appellant was tried by a general court-martial composed of officer members at K.I. Sawyer Air Force Base, Michigan. Contrary to his pleas, he was convicted of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, forfeiture of $250.00 pay per month for 4 months, and reduction to airman basic. The convening authority approved the sentence on July 27, 1990, and the Court of Military Review[1] affirmed on September 1, 1992. *See* 1992 WL 225873.[2]

2. We granted review of the following issues as framed by appellate defense counsel:

### I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING A NEW TRIAL WHEN A WITNESS CAME FORWARD AFTER FINDINGS AND ADMITTED TO SPIKING APPELLANT'S FOOD WITH COCAINE.

### II

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING A NEW TRIAL IN SPITE OF A POST–TRIAL OSI INVESTIGATION WHICH SIGNIFICANTLY UNDERMINED THE INTEGRITY OF THE URINALYSIS PROGRAM AT APPELLANT'S BASE AND REVEALED THAT THE SPECIMEN CUSTODIAN IN APPELLANT'S CASE ADMITTED TO USING DRUGS AND TAMPERING WITH AT LEAST ONE SPECIMEN.

### III

WHETHER COUNSEL FOR APPELLANT IS ENTITLED TO HAVE ACCESS TO DOCUMENTS SEALED BY A TRIAL COURT UNDER RCM 701(g)(2), ABSENT OVERRIDING CONCERNS FOR NATIONAL SECURITY OR THE SAFETY OF AN UNIDENTIFIED INFORMANT.

3. As to the first issue, we hold that the military judge did not err by denying appellant a new trial. However, he did err when he denied appellant the opportunity to reopen his case to present newly discovered evidence to the court-martial. This holding renders Issue II moot. (As to Issue III, *see* n. 2, *supra.*)

4. Appellant was charged with using cocaine sometime between October 13 and 20, 1988. He denied using the substance and vigorously contested the urinalysis evidence presented by the Government. Nevertheless, he was found guilty. Following findings, the proceedings recessed for the evening. It was during that recess that Mr. Sean Duffy came forward and revealed new evidence in the form of an admission of personal misconduct which, if true, arguably could exculpate appellant from any criminal liability. He furnished an affidavit that was presented to the military judge in support of the motion to reopen appellant's case.

5. According to Mr. Duffy, he attended a party on October 8, 1988, with appellant and several high school friends. The party was hosted by appellant's parents in their New

---

1. *See* 41 MJ 213, 229 n. * (1994).

2. After this case was earlier set for oral argument, this Court vacated the hearing notice, set aside the decision of the Court of Military Review, and remanded the record to the Court of Military Review for reconsideration in light of our opinion in *United States v. Branoff,* 38 MJ 98 (CMA 1993). *See* 39 MJ 334 (CMA 1993). These matters fall within the ambit of the third granted issue. The Court of Military Review reconsidered its earlier decision and, in a subsequent opinion, once again affirmed the approved findings and sentence. 1994 WL 259480. Our hold-

Jersey home. Mr. Duffy admits that, sometime during the party, he used the glass on a framed picture to line some cocaine. Appellant was under the impression that Duffy inhaled the lines of cocaine. Mr. Duffy now swears that he did not. Rather, Mr. Duffy says that, after appellant's mother admonished him and asked him to leave, he surreptitiously "blew [the cocaine] across a plate of cookies that were sitting on the table." When appellant returned to his base, he took some of those cookies back with him and presumably consumed some or all of the cookies in the days prior to the random urinalysis.[3]

6. The evening after findings, defense counsel represents that he became aware of this information for the first time. The next morning, he moved for a mistrial on the basis of newly discovered evidence. RCM 915, Manual for Courts–Martial, United States, 1984. The military judge denied this motion.[4]

7. Defense counsel then requested the opportunity to reopen his case to present this newly-discovered information to the members for reconsideration of the findings.

8. The military judge applied the same legal standard for deciding whether appellant would be allowed to reopen his case as he applied to the motion for a mistrial. In both instances, he applied the same rules he would apply to a motion for a new trial. RCM 1210(f)(2). Thereafter, he denied the motion. Perhaps he was guided by our cases. *See United States v. Eshalomi*, 23 MJ 12, 28 (1986), where Judge Cox, concurring, stated:

If the discovery [of new evidence] occurs prior to announcement of the sentence and if the accused so moves, the military judge has the option of reopening the trial for the purpose of presenting the evidence to

the court-martial. In considering the motion, I would adopt the same test that is used to determine if a new trial would be warranted by the discovery of new evidence. "[T]he newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused."

9. Defense counsel also moved that the military judge "direct a verdict" for appellant. The military judge likewise denied this motion. The basis for all of the military judge's rulings was that the "due diligence" requirement of the newly-discovered-evidence rule, RCM 1210(f)(2), had not been met. The military judge ruled as follows:

A very crucial aspect of the rules about newly discovered evidence is whether it is such that it would not have been discovered at the time of trial through the exercise of due diligence. Based on the evidence and the defense representations before me, I find that the evidentiary matters raised to me from Mr. Duffy fall under the category of matters that would have been discovered through due diligence.

10. Thus we are faced with two important questions regarding this issue. First, did the military judge apply the correct legal standard for consideration of the various trial motions? Second, if he did use the correct standard, did he abuse his discretion in applying the facts of this case to the appropriate rule of law?

11. As to the motion for mistrial, it is clear that the military judge treated the motion as a petition for new trial based upon newly discovered evidence. RCM 1210. In a real sense, a motion for a mistrial, which occurs after findings have been announced, is

ing makes it unnecessary to decide Issue III at this time.

3. On October 18, 1988, appellant was informed that he would have to submit a urine sample on October 20, 1988. There is no question that appellant complied with his instructions, and there is no contest as to the conclusion that the sample tested positive.

4. Defense counsel also renewed his motion after trial by requesting a post-trial session under Article 39(a), Uniform Code of Military Justice, 10

USC § 839(a), to consider evidence on the issue. The military judge denied that motion by ratifying his earlier decisions on the matter. Unquestionably, the judge could have entertained this matter in a proceeding under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), and if the information was raised for the first time there, then he could have applied, as he did, RCM 1210, Manual for Courts–Martial, United States, 1984, standards for resolution. Arguably, as indicated, what appellant really sought to do later was to reopen his case.

asking the judge for a new trial, although there may be many reasons for mistrials other than newly discovered evidence. However, mistrial motions are governed by a different rule. RCM 915 provides:

> The military judge may, as a matter of discretion, declare a mistrial *when such action is manifestly necessary in the interest of justice* because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings. A mistrial may be declared as to some or all of the charges, and as to the entire proceedings or as to only the proceedings after findings.

(Emphasis added.)

12. Thus, the standard for a mistrial requires the military judge to view the proceedings from the viewpoint of whether it is necessary to start the case (or a portion of it) over to ensure justice and fairness. The fact that new evidence has been discovered during the proceedings may be a reason for granting a mistrial, but the "newly discovered evidence rule" is not the test. As we have previously stated, "a mistrial is a drastic remedy and is reserved for only those situations where the military judge must intervene to prevent a miscarriage of justice." *United States v. Garces,* 32 MJ 345, 349 (CMA 1991). Because a mistrial is such "a drastic remedy," we have recognized that the military judge should explore other remedies, such as curative instructions or permitting a party to reopen the case. *United States v. Evans,* 27 MJ 34, 39 (CMA 1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989).

13. It is now beyond doubt in military jurisprudence that a military judge is empowered to reopen a case even after findings have been announced. *United States v. Scaff,* 29 MJ 60 (CMA 1989); *United States v. Griffith,* 27 MJ 42 (CMA 1988). RCM 913(c)(5) recognizes: "A military judge may, as a matter of discretion, permit a party to reopen its case after it has rested."

14. However, we believe the literal and strict application of the newly-discovered-evidence rule, which implements the statutory rule found in Article 73, UCMJ, 10 USC § 873, during a trial, is inappropriately severe. Indeed, in *United States v. Ray,* 26 MJ 468 (CMA 1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989), Chief Judge Sullivan stated that RCM 913(c)(5) created a "flexible standard ... which sought ... to avoid the granting of motions for [a] finding of not guilty where available evidence had not been presented by the prosecution." 26 MJ at 470, *citing* Drafter's Analysis, Manual, *supra* at A21–55. We also recognized: "This procedural rule implies that the moving party should proffer some reasonable excuse for its request to reopen its case." 26 MJ at 471.

15. Let there be no doubt that a party should not be allowed to profit from his or her lack of due diligence in investigating the case or to play games with the court and "hide" evidence, awaiting the verdict before springing the evidence upon opponents. *See generally* 75 AmJur2d, Trial § 382 (1991). But the same policy considerations for granting new trials long after completion of a trial do not necessarily apply to motions to reopen a case before the trial is over. *See* Fed. R.Crim.P. 33 (7–day rule/2–year rule). If the trial is still on-going, the parties are only marginally inconvenienced; all decision makers are in place; and the interests of justice can only be served by a complete and fair hearing of all the relevant evidence then available. *Compare* provisions concerning jury trial *with* bench trial in Fed.R.Crim.P. 33.

16. Unlike most civilian and federal jury trials, a court-martial composed of members plays a dual role in the trial. The court-martial members adjudicate the issue of guilt and, upon a finding of guilty, they pass judgment upon the sentence to be imposed. RCM 924 recognizes that members, upon their own motion, may reconsider a finding of guilty at any time before the announcement of sentence. In other words, the court-martial process is designed to be fair and, at the same time, to give finality to the case. Allowing an accused to reopen his or her case, even after findings, upon a proper showing that new and relevant evidence has been

discovered which, if true, may well vindicate him, is not alien to the ideals of the court-martial system. Even the prosecutor has the duty to reveal newly discovered evidence, notwithstanding the fact that the case has been completed and deliberations have commenced. *United States v. Eshalomi, supra.* ¶ 8.

17. We decline the opportunity, however, to fashion a particular rule to guide military judges in exercising discretion on whether to permit a party to reopen his or her case. Suffice it to say, normal rules of relevance, cumulativeness, adequacy of substitutes in the record, completeness of the record, the interests of justice, the elimination of post-trial attacks on the verdict, as well as mitigation of ineffective-assistance-of-counsel claims are all considerations. But the primary consideration should be whether discovery of the new evidence is *bona fide* and whether the new evidence, if true, casts substantial doubt upon the accuracy of the proceedings; that is, a rule which is not only fair to the defendant, but fair to the prosecution as well.

18. The question then remaining in this case is whether the military judge abused his discretion by denying appellant the right to reopen his case to present the new evidence. One test for abuse of discretion is whether the military judge's rulings "materially prejudice[d] the substantial rights of the accused." Art. 59(a), UCMJ, 10 USC § 859(a). We conclude in this case that they did.

19. First, notwithstanding the military judge's ruling that the witness could have been discovered had appellant used due diligence, arguably quite the opposite was the case.[5] Defense counsel did not lack due diligence for his failure to interview attendees at

the party. An expert consultant opined that, based upon the test results of appellant's urine sample, any ingestion of cocaine had occurred after the date of the party. Accordingly, the focus of the defense did not turn to what may have happened at the party until they learned that appellant ate some of the contaminated cookies at a later time, within the window suggested by the expert. In this regard, we note that the Court of Military Review was wrong in its first opinion when it said, "[G]laringly absent is any offer of proof, affidavit, or other assertion that the appellant ever consumed any of the allegedly adulterated cookies." 1992 unpub. op. at 4 n. 2. Trial defense counsel's brief in support of the motion for a new trial proffers that the cookies "were consumed by both appellant and his co-workers during October 1988." (Attachment 1 to Appellate Exhibit LXXXVIII at 5).

20. Furthermore, Mr. Duffy purportedly did not come forward and admit his involvement until after he was advised of appellant's conviction. There was nothing to discover until Mr. Duffy presented himself and his evidence. In this circumstance we will not hold appellant responsible for the delay.[6]

21. Second, the court-martial was still assembled when the motion was made. It should have been evident to the military judge from the tenor of the questions by the court members to appellant on the witness stand that the members were acutely interested in whether appellant could have innocently ingested the unlawful substance. It is not at all clear that the testimony of Mr. Duffy would not have given the members cause for reasonable doubt as to appellant's guilt. We have stated:

> Suffice it to say, ... [the new information] give[s] us pause as to the completeness of the factfinding process. Obviously, [the

---

5. We are not saying that a military judge may never refuse to reopen a case because of a lack of due diligence. However, our case law suggests that RCM 913(c)(5) is most often used by the Government to fix a gap in the proof of a case, gaps which may well have been the result of a lack of "due diligence." *See United States v. Ray,* 26 MJ 468, 470 (CMA 1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989).

6. In point of fact, a ruling of "lack of due diligence" invoked against the conduct of a *defense counsel* raises the awesome specter of "ineffective-assistance-of-counsel" claims. *See United States v. Scott,* 24 MJ 186 (CMA 1987) (counsel's failure to promptly investigate and prepare accused's sole defense of alibi was ineffective assistance of counsel).

new information] ha[s] not been tested in the crucible of trial, and we can intimate no judgment whatever as to the ultimate conclusions of veracity or weight a factfinder might attach to them. Nevertheless, whether we ascribe [the new information's] absence from the process to the fog of command influence, the inability of counsel to ascertain the facts, misguided friends, pusillanimous witnesses, outright perjury, or just plain bad luck, this trial has to go back to square one. On this record, despite the best of intentions and efforts of the military judge, we cannot conclude, in a due process sense, that appellant has yet enjoyed a full and complete trial. Far too much of the information that needed to be evaluated by a factfinder, in order to assess appellant's culpability, was not. We conclude that the military judge abused his discretion in concluding that the evidence probably would not produce a substantially more favorable result for appellant. RCM 1210(f)(2)(C); Art. 73, UCMJ, 10 USC § 873.

*United States v. Singleton*, 41 MJ 200, 206–07 (CMA 1994).

The decision of the United States Air Force Court of Military Review on further review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges GIERKE and WISS concur.

CRAWFORD, Judge (dissenting):

22. I dissent from the majority's conclusion that the judge erred by applying the incorrect legal standard to appellant's request to reopen his case to present new evidence. The majority's standard appears to be that "the primary consideration should be whether discovery of the new evidence is *bona fide* and whether the new evidence, if true, casts substantial doubt upon the accuracy of the proceedings." ¶ 17. But even accepting this as the standard, I do not believe that appellant is entitled to reopen his case based upon the record of this trial. What he sought to offer is neither new evidence nor

evidence that impinges upon the accuracy of the findings.

23. The standard of review for whether a judge should declare a mistrial is whether his decision was an abuse of discretion. *United States v. Dancy*, 38 MJ 1, 6 (CMA 1993). That same standard is applied to the question of reopening one's case and a motion for a new trial. *United States v. Van Tassel*, 38 MJ 91, 96 (CMA 1993); *see also United States v. Williams*, 37 MJ 352, 357 (CMA 1993).

24. RCM 1210(f)(2), Manual for Courts–Martial, United States, 1984, provides as follows:

> (f) *Grounds for new trial.*
>
> (1) *In general.* A new trial may be granted only on grounds of newly discovered evidence or fraud on the court-martial.
>
> (2) *Newly discovered evidence.* A new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that:
>
>> (A) The evidence was discovered after the trial;
>>
>> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
>>
>> (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

25. The rationale behind the due-diligence standard in terms of judicial economy and finality applies equally to the motions for mistrial or to reopen. In reviewing a judge's discretion in determining whether to allow a party to reopen, one must examine the parties' good faith, negligence in introducing or failing to introduce the evidence, and any deliberate withholding of evidence. *State v. Booze*, 334 Md. 64, 637 A.2d 1214, 1216–17, 1220 (1994).

26. Appellant was tried in Michigan 14 months after he was with Mr. Sean Duffy at a party in New Jersey and subsequently tested. As this Court indicated in *United States v. Scott*, 24 MJ 186, 188 (1987), de-

fense counsel has an obligation to investigate his or her case. This obligation applies to the prosecutor as well. Rule 1.3, Rules of Professional Responsibility, TJAG Policy Letter 26 (22 Oct 92). Contrary to the majority's assertion of marginal inconvenience to the parties, reopening a case involves much more than simply calling Duffy to the witness stand. No prosecutor should agree to calling this witness without having an opportunity to investigate Duffy's background, examine the scene, determine who else was present at the party and their knowledge of what happened, determine whether other parties may have taken place there, and whether drugs were involved at those parties.

27. In addition to this practical limitation, the judge found a lack of due diligence by the defense. As the judge stated:

Based on the evidence and the defense representations before me, I find that the evidentiary matters raised to me from Mr. Duffy fall under the category of matters that would have been discovered through due diligence. I note that the information about cocaine availability at the party the weekend—two weekends apparently—before the test was known. That cookies were brought back would have been obviously known, and the representations to me indicate that the sister had clearly heard about Mr. Duffy before last night.

28. In fact, defense counsel moved *in limine* to preclude the Government from introducing any evidence as to a cocaine party at the mother's house. The parties stipulated to the expected testimony of Special Agent Ricky W. Charles, as follows:

While conducting an investigation involving A1C Fisiorek I had the opportunity to speak with him while he was under rights advisement. During that interview, I asked A1C Fisiorek several questions. He stated to me that on a four day weekend in October 1988 he had traveled to his home in New Jersey. While at home he and several high school buddies were in the basement of his parents' house. At one point a friend of his pulled out some cocaine and A1C Fisiorek gave that friend a

beer mirror from the wall. The friend lined out two lines of cocaine and snorted them. A1C Fisiorek stated that he did not use any cocaine. I asked him about the possibility of someone putting drugs in a drink. A1C Fisiorek said that he left open beer cans sitting around when he went to the bathroom, but didn't think one of the guys would have spiked the beer with cocaine. Additionally, A1C Fisiorek told me that he did not disclose his pre-enlistment marijuana usage on his enlistment papers. He said that he had used marijuana three to four times a week prior to coming on active duty. He said he had told his recruiter and his recruiter told him to put down his use as experimental.

29. The judge deferred any ruling on the motion *in limine* to see whether the defense would open the door. *Cf. United States v. Turner*, 39 MJ 259, 262 n. 1 (CMA 1994). The defense did open the door with this argument:

If he's going to lie, he had every opportunity in the world. I mean people asked him from the panel what did you have to eat? This is a guy who sat and listened to *three days* of testimony about how it could have gotten into *his food*. Three days he sat there and listened to that. He gets up on the stand and he says I don't have any good reasons. All he had to do is say, jeez, I was at a bar downtown, sitting there with some civilians, drinking a beer, getting drunk, went to the bathroom a million times, came back. I don't know if I had anything or not. I was so drunk I don't remember if I was afoot or horseback. Did he say that? No. Did he have any bar stories? No. So if a guy's going to lie, that's when he's going to lie. He sat there and listened to three days worth of how it could have been in his food. The guy would have to be *brain dead* not to catch on that that's maybe pretty important.

(Emphasis added.)

30. However, the Government did not seek to introduce the stipulation. It responded as follows to the mistrial motion:

Your honor, we maintain that this evidence is not newly discovered and could have been discovered a long time ago, if in fact it even existed prior to the announcement of the findings yesterday.

There's clearly been an abundance of notice about this gathering that happened in October. The accused has been asked about his food consumption during the time. He was asked back about what the possibilities were, and even from the closing argument of his counsel, he's been asked to wrack his brain to find any and all possible ways that this may have happened. We would maintain that this is not newly discovered evidence, your honor, and a mistrial should not be declared.

31. *If* one accepts the defense contention that the party was on October 8, rather than October 15, and the cocaine was related to the party at appellant's mother's house, the defense recognized that the nanogram level was such that there had to be an ingestion of cocaine that occurred after the date of the party. Defense counsel knew of the potential for "spiked" food, yet chose not to introduce such evidence because it would have opened the door for the Government to introduce what happened at appellant's mother's house. The defense was well aware of the adverse impact this explosive evidence could have at a general court-martial.

32. During the 14 months following appellant's testing, his family was well aware of the charges against him (see mother's and sister's affidavits). Additionally, appellant's mother and father attended portions of the trial. The sister's affidavit indicates that "we all knew about Sean Duffy having cocaine in our home."

33. Closing argument at trial was by the civilian defense counsel who orally argued this case before our Court. This lawyer's credibility was tested during oral argument when he indicated that appellant was a "supertrooper" and an "outstanding member of the Air Force." These assertions were immediately rebutted by appellate government counsel, who pointed out that appellant had a prior punishment under Article 15, Uniform Code of Military Justice, 10 USC § 815, for larceny.

34. This is not a case where concerns for justice and reliability of the trial results hinge on reopening findings to present this evidence. On the contrary, not only was this evidence available to the defense, but also it was understandably part of appellant's trial strategy not to reveal that appellant was exposed to cocaine by a friend at a party in his parents' home. I submit that had this evidence been presented to the members along with the information about the nanogram level, it certainly would not have brought about a more favorable result for appellant.

35. The defense was not "brain dead" here. Rather, appellant is trying for another "bite at the apple" in an attempt to switch defense strategies by seeking to reopen the trial to introduce evidence of contaminated food brought back to the barracks by appellant—evidence which the judge found "would have been discovered through due diligence." The majority has not persuaded me that the defense did not have access to this evidence and that the evidence would have produced a substantially more favorable result. Under these circumstances, I conclude that the judge did not abuse his discretion in denying appellant's request to reopen the trial.