# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain RYAN F. BARRETT**
**United States Army, Appellant**

ARMY 20170354

U.S. Army Military District of Washington
Daniel G. Brookhart, Military Judge
Colonel John P. Carrell, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Lieutenant Colonel Christopher D. Carrier, JA (on brief).

For Appellee:  Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Hannah E. Kaufman, JA; Captain Meredith M. Picard, JA (on brief).

5 March 2019

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Senior Judge:

Appellant asserts: (1) that the military judge abused his discretion in denying the defense request to reopen its case to present additional evidence, and (2) that his convictions represent an unreasonable multiplication of charges for findings.  We find that the military judge did not abuse his discretion in denying the defense request, but we agree that appellant's charges are unreasonably multiplied.  As such, we grant appropriate relief in our decretal paragraph.[1]

---

[1] An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of maltreatment of a subordinate, abusive sexual contact, assault consummated by battery, and conduct unbecoming an officer and a gentleman, in violation of Articles 93, 120, 128, and 133, Uniform Code of Military Justice (UCMJ).  The convening authority approved the adjudged sentence of a dismissal and confinement for 180 days.

**BACKGROUND**

This case involves the assault of Chief Warrant Officer Two (CW2) KC by appellant, her company commander.

In September 2014, appellant and CW2 KC were tasked to fly their aircraft to the Joint Readiness Training Center at Fort Polk, Louisiana. During the trip, they stopped overnight in Morgantown, West Virginia. After going out to dinner, the pilots returned to their hotel, where they socialized before CW2 KC went to her room. Appellant followed her uninvited.

Despite CW2 KC's requests, appellant did not leave her room. Instead, he told her, "You can get ready for bed. I won't look," and sat at the foot of her bed before adding, "I'm not going to try to have sex with you. You're just sexy." When CW2 KC replied that he should leave, appellant grabbed her by the waist, threw her onto the bed, and pinned her down.

After CW2 KC slid out from under him, appellant grabbed the back of her shirt and pulled it over her head. She then went for the door and appellant grabbed the back of CW2 KC's bra and snapped the clasp. Appellant then started to pull down her pants. When CW2 KC turned around to face him, appellant grabbed her again. The two struggled and crashed into an end table, where CW2 KC sustained a horizontal cut on her back. Although appellant was a good deal larger than CW2 KC, she had the advantages of being trained in several martial arts and of being sober. Once they were on the floor, CW2 KC restrained appellant and told him to leave the room. Appellant did so.

At trial, the government introduced a photo of a healed scar on CW2 KC's back to support her claims that appellant injured her. The court-martial closed for deliberations at 1716 hours on 17 May 2018. The next morning, the defense moved to reopen appellant's case under Rule for Courts-Martial (R.C.M.) 913(c)(5). After the panel reached a verdict, the defense alternately cited R.C.M. 924.

During the motions hearing, trial defense counsel explained they had just received "modeling-type" photographs of CW2 KC, which allegedly depicted a scar on her back that predated the assault. More specifically, trial defense counsel discovered these photographs during panel deliberations after overhearing two defense witnesses – who had previously testified – talking about them. These witnesses revealed that the photographs were taken by another soldier nearly two months before the attack in CW2 KC's hotel room.

When the military judge asked why the defense had not discovered the photographs earlier, the defense counsel responded, "There's no way I could've known that."

Upon examining the photographs, the military judge could not see any scar on CW2 KC's back. The defense counsel circled the alleged scar on one photo, which was inserted as part of Appellate Exhibit 11. The military judge also permitted the defense to display the images on different screens, but he still could not see a scar.

In denying the defense request, the military judge found that the evidence would not have been discovered through due diligence. However, since he could not see a scar, the military judge found that the photographs did not cast substantial doubt on the fairness of the proceedings. Moreover, the military judge found the photographs fell "below the standard of relevance under [Mil. R. Evid.] 403," as their "low probative value" was "substantially outweighed by the risk of unfair prejudice, confusion of the issues, and delaying the case."

## LAW AND DISCUSSION

### A. When a Party is Permitted to Reopen its Case

We review a military judge's decision on whether to reopen a case for abuse of discretion. *United States v. Satterley*, 55 M.J. 168, 169 (C.A.A.F. 2001).

Under R.C.M. 913(c)(5), "The military judge may, as a matter of discretion, permit a party to reopen its case after it has rested."[2] When a party moves to reopen evidence, it raises potential concerns that the party did not exercise due diligence, or worse, is potentially "sandbagging" the court. *See, e.g.*, *United States v. Fisiorek*, 43 M.J. 244, 247 (C.A.A.F. 1995); *United States v. Ray*, 26 M.J. 468, 473 (C.M.A. 1988) (Everett, C.J., concurring) ("[allowing a party to reopen its case] certainly is not a practice that should be encouraged, because it tends to reward poor trial preparation"). Therefore, parties seeking to reopen their case must provide a reasonable excuse as to why they did not present the evidence at an earlier opportunity. *Ray*, 26 M.J. at 471.

A military judge has broad discretion in deciding whether to reopen a case. Indeed, in *Fisiorek*, our superior court declined to fashion a specific rule for analyzing this issue. 43 M.J. at 248. Instead, our higher court listed several factors to consider in this analysis, to include "normal rules of relevance, cumulativeness, adequacy of substitutes in the record, completeness of the record, the interests of justice, the elimination of post-trial attacks on the verdict, as well as mitigation of ineffective-assistance-of-counsel claims." *Id*. Notably, the CAAF stated "the primary consideration should be whether discovery of the new evidence is *bona fide* and whether the new evidence, if true, casts substantial doubt upon the accuracy of the proceedings." *Id*. (italics in original).

---

[2] Like the parties, we interpret appellant's case as involving an R.C.M. 913(c)(5) issue and not an R.C.M. 1210 issue (petition for new trial).

Appellant contends the defense should have been permitted to reopen its case for two reasons: (1) the late discovery of the photographs was reasonable, as the defense could not have known to ask about them, and (2) the photographs cast substantial doubt on the accuracy of the proceedings, as they show that the scar on CW2 KC's back predates the incident.

We find the military judge did not abuse his discretion in denying the defense request. At a minimum, the photographs do not cast substantial doubt on the accuracy of the proceedings.[3] If the photographs had clearly depicted a scar on CW2 KC's back, they would have contradicted her testimony that the scar came from the incident. The military judge, however, did not see a visible scar despite examining the photographs on print, laptop, and an Elmo overhead projector.

Accordingly, and for the reasons outlined in his ruling, the military judge did not abuse his discretion in denying the defense request.

### B. Unreasonable Multiplication of Charges

For the Specification of Charge I, appellant was found not guilty of attempted rape but guilty of the lesser-included offense of assault consummated by battery. Based on the panel's finding, this specification encompassed purely assaultive conduct that collectively overlapped with the charged language of two other specifications.[4]

---

[3] Although the military judge found that the photographs would not have been discovered through due diligence, we are hesitant to adopt his rationale. Given the importance of CW2 KC's scar, the defense had a compelling interest in asking about potential photographs of the injured area. The fact that two defense witnesses knew about these photographs – and even openly discussed them – raises questions as to whether they could have been discovered earlier through due diligence. However, we leave such questions for another day, as our decision is not predicated on overturning this finding, nor do we think there is a reasonable probability that admission of the photographs would have altered the result of appellant's trial.

[4] This assault specification addressed "pinning [CW2 KC] to the bed, ripping her shirt off, tearing her bra strap, pulling her pants down to her ankles, grabbing her around the waist with his arms, and pulling her towards the bed."

By comparison, the abusive sexual contact specification included, in part, "pinning [CW2 KC] down on the bed and grabbing at her arms, legs, and waist with his hands," and the maltreatment specification included "unlawfully grabbing [CW2 KC] with his hands and arms, causing her to fall and strike a nightstand on her back."

Pursuant to a defense objection, the military judge merged these three specifications for sentencing purposes. On appeal, appellant asserts these specifications also represent an unreasonable multiplication of charges for findings. Appellant concedes this issue was forfeited at trial, and we do not find plain error in the military judge failing to act sua sponte for findings. As such, under Article 66, the findings are correct in law and fact.

However, we find this contested case – in which the issue of unreasonable multiplication of charges was only fully presented when the panel returned a verdict on a lesser-included offense – is the type of scenario where we should use our Article 66 authority to "notice" the forfeited issue, treat the claim as preserved, and grant appropriate relief. *See, e.g., United States v. Conley*, __ M.J. __, 2019 CCA LEXIS 88 (Army Ct. Crim. App. 28 Feb. 2019) (discussing our broad and unique military authority under Article 66, UCMJ). After applying the factors outlined in *United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001), we grant relief for the assault specification in our decretal paragraph.

## CONCLUSION

Upon consideration of the entire record, appellant's conviction for the Specification of Charge I is SET ASIDE and *conditionally* DISMISSED. Our dismissal is conditioned on the Specification of Charge II and the Specification of Charge III surviving the "final judgment" as to the legality of the proceedings. *See* UCMJ art. 71(c)(1) (defining final judgment as to the legality of the proceedings). The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances of appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

Upon reassessing the sentence based on the noted error and entire record, we AFFIRM the sentence as approved. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Judge SALUSSOLIA and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court