**UNITED STATES, Appellee,**

v.

**Christopher JOYNER, Sergeant, U.S. Air Force, Appellant.**

No. 60,017.
ACM S27499.

U.S. Court of Military Appeals.

Sept. 28, 1989.

For Appellant: *Colonel Richard F. O'Hair* and *Captain Mark R. Land* (on brief); *Colonel Leo L. Sergi.*

For Appellee: *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Captain Joseph V. Treanor, III* (on brief); *Lieutenant Colonel Morris A. Tanner, Jr.* and *Captain Marc Van Nuys.*

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge sitting alone as a special court-martial convicted appellant, despite his pleas, of two instances of using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Thereupon, the judge sentenced appellant to a bad-conduct discharge, confinement and forfeiture of $250 pay per month for 3 months, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed. 25 MJ 730 (1987). We granted review to decide this issue:

> WHETHER THE MILITARY JUDGE ERRED BY ADMITTING PROSECUTION EXHIBIT 31, A NEGATIVE URINALYSIS TEST OF A SAMPLE GIVEN BY APPELLANT NEARLY A YEAR BEFORE THE CURRENT TESTS IN QUESTION AND OFFERED, IN REBUTTAL, TO PROVE THAT APPELLANT HAD USED MARIJUANA PREVIOUSLY.

## I

Each of the specifications of which appellant was convicted was based upon a urinalysis. The first was a random test conducted in March 1986 that revealed the presence of marijuana's active ingredient (tetrahydrocannabinol (THC)) in appellant's urine; subsequently, this was confirmed by a gas chromatography/mass spectrometry (GC/MS) analysis. When these results were returned in April, appellant was summoned by his commander, at which time appellant offered to submit a specimen for a second urinalysis. Appellant did so, with the same results—leading to the second specification.

The defense offered expert testimony questioning the validity of the test results. Moreover, Joyner, testifying in his own behalf, denied the alleged use of marijuana in March and April 1986 and, on direct examination, earnestly asserted that he had never used marijuana. Moreover, he confirmed that, upon being informed by his commander that he had tested positive, he "asked to be allowed to take a second urinalysis." As defense counsel had indicated in his opening statement, it was the defense theory that Joyner would never have asked for another urinalysis unless he had been sure of his own innocence.

Trial counsel challenged this defense position during appellant's cross-examination:

Q. ... Sergeant Joyner, isn't it a fact that the reason that you asked for another urine test on the 17th of April [was] that you had given a urine sample approximately a year earlier and it had come up negative on that test?

A. That's true, sir.

Q. That you had given a sample on the 16th of April, 1985 [a year before the instant offenses], hadn't you?

A. Sir, I don't recall the exact date but it was in that time frame.

Q. And that was a random inspection urinalysis, wasn't it?

A. Yes, it was.

Q. And you came back negative on that test, didn't you?

A. Yes, sir.

Q. You'd never [received a] positive report from that test, did you?

A. No, I did not.

Q. And yet you had used marijuana prior to giving that urine specimen on the 16th of April [1985], hadn't you?

A. Not to my recollection, sir.

In rebuttal, trial counsel sought to introduce the report of a urinalysis conducted a year earlier on a specimen submitted by appellant—the same urinalysis to which the prosecutor had referred during appellant's cross-examination. As this colloquy reflected, that report had been "negative" as to the presence of marijuana: It reflected presence of THC in a concentration of only 14 nanograms per milliliter—below the 20 ng/ml level required by Air Force and Department of Defense regulations for a "positive" report. *See United States v. Arguello*, 29 MJ 198, 204 (CMA 1989).

Pointing this out, defense counsel objected. He argued that, because the report was "negative" and was below the level required for a "positive" conclusion, the indication of any presence of marijuana's active ingredient was unreliable. Moreover, he contended that Mil.R.Evid. 608(b), Manual for Courts–Martial, United States, 1984, prohibited the prosecutor's use of specific acts to impeach Joyner's denial of having ever used marijuana.

As to the latter point, trial counsel suggested that the defense "has misunderstood the purpose for which this evidence is being offered." He reminded the court that, from the outset, the defense had urged "that someone would not volunteer to submit a urine sample if he had any reason to believe that it would come up positive"—in other words, Joyner was innocent or he would not have made such an offer. According to trial counsel, the outcome of the urinalysis conducted a year before indicated that Joyner had a different—not innocent—motive for requesting this second test. Having received a "negative" report in 1985, even though he had used marijuana, "the accused was vol-

unteering to submit this second urine sample because he had good reason to suspect that the result would be negative even though he knew that he had used marijuana."

Anticipating the defense position that "[t]he result was negative and [a] negative result doesn't rebut anything that anyone has said in this court-martial in evidence," trial counsel argued:

> [T]here was THC metabolite sufficient in the urine for experts to be able to say that there was some use of marijuana. The reason it was reported as negative is simply because of the DOD standard that was set.

Ultimately, the military judge overruled the defense objection and admitted the report. In doing so, he reasoned:

> Even if this evidence were to be viewed solely as an attack upon the accused's credibility as a witness, I judge that specific instances of conduct such as that presented by Exhibit 31 could be admissible because the accused specifically denied, during direct testimony, any prior use of marijuana. But I find it unnecessary to base this ruling on that basis alone, as I am satisfied that one of the primary aspects of the defense theory of this case as presented in [the] opening statement and in questioning of witnesses, including the accused, is that the accused had no motive to provide a second urine sample other than to establish that he had not used marijuana.
>
> Exhibit 31 offers some evidence that [t]he accused may have had another motive and, thus, is relevant and material to issues before this court.

Earlier, defense counsel had objected to admission of the report because several documents constituting the "litigation package" appeared to be missing. He argued that part of this package should not be admitted without the full documentation being offered. *See* Mil.R.Evid. 106. In response, trial counsel offered to obtain and submit the missing documents if the military judge were to grant a recess so they could be obtained. *Id.* Defense counsel agreed to a continuance for that purpose, and the military judge complied.

When trial resumed 6 days later, defense counsel declined to offer any further evidence in surrebuttal. The prosecution, however, recalled one of its earlier expert witnesses, Dr. Jain. During a small part of Dr. Jain's rather extensive examination by both counsel and the court, trial counsel asked Dr. Jain to examine the "litigation package" that had been obtained and had been marked as a prosecution exhibit and to determine whether he saw "anything wrong with it." Dr. Jain responded that, indeed, he did "see one thing very seriously wrong in it": Because the laboratory had failed to take account of the fact that the sample tested was only 3 milliliters instead of the usual 5 milliliters for which the testing equipment was calibrated, the THC concentration level in the specimen actually was 23.3 ng/ml, not the reported 14 ng/ml. When, at that point, trial counsel offered the "litigation package" into evidence, defense counsel affirmatively noted no objection.

## II

■ Appellant contends that the military judge should not have admitted into evidence the "negative" laboratory report of the urinalysis that had occurred a year earlier. In his view, the Government was bound by its own regulations directing that a test which revealed a concentration of nanograms below a prescribed threshold level be reported as negative for the presence of marijuana in the tested urine specimen; and so no expert testimony was admissible to reinterpret the test results.

Viewed at the point at which the military judge admitted the report, appellant is correct. Use of a urinalysis result that reports a "negative" presence of a prohibited substance in the tested specimen as evidence, nonetheless, of the positive presence of that substance is contrary to government regulations. *United States v. Arguello, supra.*

However, Dr. Jain's unchallenged later testimony, following his examination of the "litigation package," indicated that the raw data of the urinalysis should have been interpreted to reflect a concentration of 23.3 ng/ml of THC in appellant's urine—well in excess of the minimum level necessary to result in a "positive" report for the presence of that substance. Had trial counsel offered Dr. Jain's testimony simultaneously with his offer of the report into evidence, then admission of the report would have been permissible under government regulations and consistent with due-process concerns to show that appellant had ingested marijuana shortly before giving his specimen. *Cf. United States v. Arguello, supra.* Accordingly, any error in prematurely admitting the report was harmless. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

■ Thus viewed as a "positive" report for THC in the earlier specimen, the report was relevant and properly admitted. In the first place the test rebutted appellant's volunteered assertion that he had never used marijuana. *See United States v. Trimper,* 28 MJ 460 (CMA 1989). Secondly, the evidence was admissible because—as the Government urged and as the military judge ruled—it tended to show appellant's "motive to misrepresent" in his testimony. *See* Mil.R.Evid. 608(c).

■ Joyner testified that, after being informed by his commander of the positive test results, he had asked for a second urinalysis. The implication of this testimony was that appellant had made his request because of his own innocence and his aim to demonstrate the same to his commander

in a positive way. However, the Government's evidence tended to show that Joyner had asked for the urinalysis not because he was innocent of drug use but because, based on his experience a year before, he thought that, even though he had used marijuana, the report of the test results would erroneously indicate the contrary. Thus rebutting appellant's testimony, this evidence made it appear that he volunteered for a second urinalysis as a gamble that the test would erroneously report his innocence, even though he was guilty.*

Evidence about the urinalysis conducted in 1985 was admissible for the two purposes to which the military judge specifically adverted. The record gives no indication that the judge—who was the factfinder in this case—impermissibly used this evidence to infer that, because Joyner used marijuana in 1985, he must have used it in 1986. *See* Mil.R.Evid. 404(b). Therefore, the granted issue must be decided against appellant.

## III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring in the result):

I agree. The results of the test were, after explanation by the expert, Dr. Jain, the type "reasonably relied upon by experts ... in forming opinions" concerning use of unlawful drugs. Mil.R.Evid. 703, Manual for Courts–Martial, United States, 1984. *See United States v. Arguello,* 29 MJ 198 (CMA 1989) (COX, J., concurring in the result).

---

* Evidence of an accused's willingness to take a test—such as a urinalysis or a polygraph examination—usually should not be admitted to demonstrate his innocence because of its minimal probative value. *See United States v. Gipson,* 24 MJ 246 (CMA 1987).