**UNITED STATES, Appellee**

v.

**Donald L. HOLMES, Sr., Technical Sergeant, U.S. Air Force, Appellant.**

No. 93–0234.
CMR No. S28461.

U.S. Court of Military Appeals.

Argued Dec. 15, 1993.

Decided May 6, 1994.

For Appellant: *Captain Joel R. Reifman* (argued); *Lieutenant Colonel Frank J. Spinner* and *Captain Ursula P. Moul* (on brief); *Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Lieutenant Colonel Thomas E. Schlegel.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infelise* and *Colonel Richard L. Purdon* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was convicted by a special court-martial composed of officer members, contrary to his pleas, of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The convening authority approved the sentence of

a bad-conduct discharge and reduction to the lowest enlisted grade. The court below affirmed the findings and sentence in an unpublished opinion dated October 30, 1992. We granted review on the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING EVIDENCE OF PRIOR MARIJUANA USE UNDER MIL.R.EVID. 404(b).

We hold the evidence that appellant used marijuana on one occasion 18 years ago was inadmissible under Mil.R.Evid. 403 and reverse the decision below.

## FACTS

The Government's case-in-chief consisted of chain-of-custody and laboratory-testing documents related to appellant's positive urinalysis results; the testimony of an expert witness to explain the documents; and the testimony of an Air Force Office of Special Investigations agent, Agent Pulliam, that appellant told Pulliam that appellant's wife had been smoking marijuana in their bed for 3 months before the urinalysis test. The Government also introduced two stipulations of expected testimony from military law enforcement personnel which indicated that appellant was not an informant or confidential source "authorized ... to possess or use marijuana pursuant to legitimate law enforcement activities." Finally, the Government introduced a stipulation of testimony from Colonel Ortaliz, the Chief of Hospital Services for the 93rd Strategic Hospital, Castle Air Force Base, California, indicating that appellant's medical and pharmaceutical records show no medical authorization for or administration of marijuana.

The Government's expert witness, Dr. Jain, testified that appellant's urine sample contained "THC metabolite derived from the active ingredient in marijuana, Delta-9-tetrahydrocannibinol [ (THC) ][,] in a concentration of approximately 108 nanograms per milliliter." Dr. Jain also testified that the THC metabolite "did not enter" appellant's body "through passive inhalation"; that if the THC entered appellant's body 48 hours before the test, "he must have felt the effect"; and that use probably occurred "within a week or even less from the point of collection."

Appellant testified during the defense case-in-chief and denied "knowingly" using marijuana during the charged time period (a 1-month period before the urinalysis). On direct examination appellant explained that his wife told him "she had been secretly smoking" marijuana "in the bedroom" while he was sleeping and "covering the smoke with talcum powder, hairsprays and cigarette smoke." Appellant also testified that he "ha[d], on occasion, stopped at a mobile food stand, but ... [he'd] never had any strange feelings that would make ... [him] think that ... [he] had picked up marijuana through some type of food."

The Government sought to impeach appellant with evidence that he used marijuana on one occasion in high school. The Government initially sought, and the military judge denied, use of the evidence to impeach appellant's testimony that he did not use marijuana during the charged time period, on the theory that appellant had put his truthfulness at issue by testifying. Because the information was obtained from a social actions record, the military judge ruled, based upon Air Force Regulation 111-1, that the evidence came from a source not "normally available" to the Government and could therefore only be used for impeachment purposes. The Government then sought to introduce the evidence to rebut appellant's testimony that he did not knowingly use marijuana. The military judge denied this use under Mil.R.Evid. 403, Manual for Courts-Martial, United States, 1984.

Trial counsel proceeded to cross-examine appellant:

Q: Do you know how marijuana is used?
A: It's smoked or ate.
Q: Did you know that before this trial?
A: Yes, sir.
Q: Have you ever seen it before?
A: Yes, sir.
Q: Where?
A: Back in school days.

Q: Do you know the physiological effects of marijuana use:

A: Yes, sir.

Q: What are they?

A: It's a high feeling. Euphoria, I think is the word, sir.

Q: Any other effects?

A: Redness of eyes. I think that's it, sir.

Q: How are you familiar with those effects?

A: I've seen articles. I've seen the stories about drug abuse, drug pamphlets of how to detect someone that's on or has been using drugs.

Q: Are you familiar with the effects of marijuana through any other means?

A: I'm not sure if I understand your question, sir.

Q: Well, you testified that you're familiar with the effects of marijuana. I asked—

IDC: —I'm going to object to this question, Your Honor, related to the earlier session that we had.

MJ: Major Breslin, do we need to have another 39(a) Session?

TC: No, sir. I'm specifically going to ask this witness if he's ever used it and how he knows. I have a lab report right here that tells me that he did, and that's what I want to ask him. He's under oath. He's put his truthfulness in evidence. If [sic] wants to perjure himself on the witness stand, then he's free to do that.

IDC: Your Honor, I'm going to object to this line before the members at this time as prejudicial.

This time, and still over objection, the military judge permitted the question:

Q: Tech Sergeant Holmes, I asked you if you were familiar with the physiological effects of marijuana and you said that you were, and you described those physiological effects, euphoria, red eyes, and what else did you say? What other physiological effects were you aware of?

A: I believe that was all I said at that time, sir.

Q: Were you aware of appetite stimulation, what people call munchies? Were you aware of that as a physiological effect?

A: That didn't come to mind, but that is one, yes sir.

Q: I asked you how it was that you were aware of the physiological effects for the use of marijuana, and you replied that you had read articles about it, do you remember that?

A: Yes, sir.

Q: Then I started to ask you about whether there was any other way that you were familiar with the physiological effects of the use of marijuana. Before you answer, I want to remind you that you are under oath. Although this is a special court-martial, for this offense you're looking at a max of like a BCD and six months. If you lie under oath, you're looking [at] a court-martial for perjury, with a maximum punishment of a DD and five years. Do you understand that?

A: Yes, sir.

Q: Now, let me ask you again, is there any other way that you're familiar with the physiological effects of the use of marijuana?

A: There was one incident in high school, sir.

Q: One incident in high school, what?

A: Smoking marijuana.

Q: So, you're well aware of the physiological effects, is that right?

A: I'm not well aware, sir. There was one incident.

Q: Where you felt those effects yourself, is that correct?

A: I would think so, sir.

Later, again on cross-examination, the following colloquy ensued:

Q: Now, being the accused in this case, it's fair to say that you have a lot to lose here, isn't that right?

A: Yes, sir.

Q: Almost 18 years of service on the line, aren't there?

A: Yes, sir.

Q: Have you ever told a lie to get yourself out of trouble?

IDC: Objection. That's irrelevant.

MJ: I'll allow the question.

TC: Have you ever told a lie to get yourself out of trouble?

ACC: Sir, I feel like everybody has told a white—a little small white lie. I haven't told any significant ones that I can remember.

Q: So, your answer is no, you've never told a lie to get out of trouble?

A: Not to get out of trouble sir, that's correct.

Q: Have you ever told a lie for your own benefit?

A: No, sir.

Q: You've never told a lie for your own benefit?

A: No sir, if I understand your question correctly.

Q: Being on flying status, you get a lot of physicals, don't you?

A: Yes, sir.

Q: When you go in for a physical, you have to give the doctor a medical history, don't you?

A: Yes, sir.

Q: And you know that when an active duty service member gives a medical history to a doctor, a treating physician, that that's an official statement, did you know that?

A: Yes, sir.

Q: You know that it's important for them to treat you and know your background and so on?

A: Yes, sir.

Q: Well, isn't it true that you have gone on several occasions and had physicals where they inquired about whether you had any history of use of drugs, and you denied it, isn't that true?

A: Yes, sir.

Q: And that's a lie, isn't it?

A: Yes, sir.

Q: You lied there, because if you revealed that you had used drugs in the past, that would look bad for you, right?

A: Yes, sir.

Q: What's your security clearance?

A: My line badge has been taken, sir. I don't have a clearance at this time.

Q: Well, I'm sorry. What was your security clearance?

A: Top secret, sir.

Q: In order to get a top secret security clearance, you have to fill out a personnel security questionnaire, don't you?

A: Yes, sir.

Q: You understand that these personnel security questionnaires are really important, right?

A: Yes, sir.

Q: And this is what people are going to look at or form the basis of granting you a top secret clearance, isn't that right?

A: Yes, sir.

Q: So, you realize that it's extremely important to be truthful in a personnel security questionnaire, don't you?

A: Yes, sir.

Q: Did you ever lie on this personnel security questionnaire?

A: I think I know what you're getting to sir, and yes sir.

Q: You lied when you said that you never used drugs before?

A: Yes, sir.

Appellant also presented good-military-character evidence by two majors, two captains, and one technical sergeant who had served with him. The Government cross-examined four of these witnesses as to whether they knew appellant lied on his annual flight physicals and his security-clearance applications concerning his 18–year–old use of marijuana and whether such knowledge would change their opinions of appellant. All of these witnesses denied knowledge of the incidents, and only one testified that it would not change his opinion.

Trial counsel, during rebuttal in closing argument on findings argued:

Maybe he's of that school of thought that a marijuana joint is the equivalent of an after dinner drink. He had gone through many years in the Air Force, perhaps selected to give a urine sample from time to time. Perhaps believes, as many people do, that drugs will stay in you system for 30 days. Perhaps had a test one time or two within 30 days of using that marijuana,

but came up negative. As you know, it doesn't stay for 30 days, at least not at a testable level. Perhaps this is someone who has been through this so many times before, he's not really concerned about what the results might be, because he's been using this marijuana and gotten away with it for 18 years.

Trial defense counsel objected to this argument as "arguing facts ... not in evidence."

Concerning this evidence, the military judge instructed the members:

> Evidence that Sergeant Holmes used marijuana one time in high school may be considered by you for the limited purpose of its tendency, if any, to prove knowledge on the part of the accused that he was aware of the physiological effects of marijuana. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and he, therefore, committed the offense charged.

> The evidence that the accused made false official statements concerning his use of marijuana—his one time use of marijuana on a physical form and security application or questionnaire, may be considered by you for the limited purpose of its tendency, if any, to weaken the believability of the accused as a witness. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, therefore, committed the offense charged.

## DISCUSSION

The contested evidence both at trial and on appeal is the Government's elicitation of an 18–year–old use of marijuana. The narrow question we must resolve is whether the military judge erred to the substantial prejudice of appellant by admitting this evidence. Art. 59(a), UCMJ, 10 USC § 859(a). There are two considerations at issue: (A) the admissibility of the evidence, *i.e.*, whether the challenged evidence is *per se* inadmissible, admissible for the purpose for which it was offered, or admissible for any other purpose; and (B) the prejudicial effect of the evidence compared to its probative value.

### A. *Admissibility of the evidence*

■ Our first consideration is whether 18–year–old evidence is *per se* inadmissible. Neither the Military Rules of Evidence nor the Federal Rules of Evidence establish a bright-line rule concerning the obsolescence of what might be politely termed antique "bad acts" evidence. Although 18–year–old evidence invites scrutiny as to whether it is timeless or merely timeworn, such evidence is not *per se* inadmissible.

■ Appellant denied on direct examination, during his case-in-chief, knowing use of marijuana during the charged time period (a 1–month period before the urinalysis test). He also testified that he "ha[d], on occasion, stopped at a mobile food stand, but ... [he'd] never had any strange feelings that would make ... [him] think that ... [he] had picked up marijuana through some type of food." The military judge was clearly concerned about admitting the evidence and initially ruled it inadmissible under Mil.R.Evid. 403 to rebut appellant's truthfulness under Mil.R.Evid. 608 or his knowing use of marijuana under Mil.R.Evid. 404(b). Only after appellant testified that he "never had any strange feelings that would make ... [him] think that ... [he] had picked up marijuana through some type of food" and knew about the physiological effects of marijuana through articles, stories, and drug pamphlets, did the military judge admit the evidence under Mil.R.Evid. 404(b) to show credibility and knowledge.

Appellant's testimony on direct examination tended to rebut the inference that appellant knew he had custody of or knowingly ingested marijuana and required additional proof of this element by the Government. Since the Government had no direct evidence, the Government's tactic at trial was to portray appellant as a liar whose innocent-or unknowing-ingestion defense was unworthy of belief.

The government expert testified, based on the nanogram level of THC in appellant's blood, that appellant would have felt the

effects. Appellant denied during his direct testimony having "any strange feelings that would make ... [him] think that ... [he] had picked up marijuana through some type of food." Trial counsel then asked appellant whether he was "familiar with the physiological effects of the use of marijuana." Appellant responded to the question initially by stating he was aware of the effects through books, stories, and pamphlets. Trial counsel was then permitted to question appellant concerning his use of marijuana 18 years ago. Appellant admitted one incident of smoking marijuana in high school. Trial counsel then asked, "So, you're well aware of the physiological effects, is that right?" Appellant responded, "I'm not well aware, sir. There was one incident." Finally, trial counsel asked appellant if he "felt those effects" himself. Appellant responded, "I would think so, sir."

Trial counsel did not contend, and there is no precedent for the proposition, that drug use in and of itself (without a conviction) is probative of truthfulness. *See* Mil.R.Evid. 609(a) and para. 37e(1)(b), Part IV, 1984 Manual, *supra*. Hence, this evidence could only become relevant when and if appellant lied about the use or the circumstances surrounding the use. Trial counsel contended that appellant lied when he asserted that he was aware of the physiological effects of marijuana though books, stories, and pamphlets, and that appellant's knowledge really was based on his 18–year–old one time drug use. To the contrary, appellant's testimony only establishes that he used marijuana one time in high school; he never testified that he felt any physiological effects from his one-time use. When pressed, appellant responded, "I would think so." This response is a far cry from an affirmation that appellant felt any particular effect at the time, remembers feeling any particular effect, or indeed that appellant even inhaled.

Later in the trial, however, trial counsel cross-examined appellant about whether he had ever told a lie to get out of trouble; appellant indicated that he had not. The 18–year–old evidence was clearly relevant at this point in the trial to demonstrate that appellant had lied about his drug use while in the military. Our inquiry does not, however, end with a relevance determination, because under Mil.R.Evid. 403, "logically" does not mean "legally" relevant. Drafters' Analysis of Mil.R.Evid. 403, Manual, *supra* at A22–32 (Change 2).

### B. *The prejudicial effect of the evidence*

■ Appellant's defense consisted primarily of his testimony, along with the testimony of two majors, two captains, and one technical sergeant concerning his good military character. The most scathing cross-examination of the defense witnesses revolved not around appellant's 18–year–old use of marijuana but rather around his 18 years of denying that use on his annual flight physicals and his security-clearance applications. Trial counsel cross-examined four of appellant's military-character witnesses as to whether they knew appellant lied on these documents. All of these witnesses denied knowledge of the incidents, and only one testified that such knowledge would not change his opinion. Finally, during rebuttal in closing argument, trial counsel argued that appellant had "been using this marijuana and gotten away with it for 18 years."

The limited evidentiary value of the original 18–year–old use of marijuana was magnified astronomically by trial counsel's tying it to appellant's 18 years of denying the use on official documents. Further, trial counsel unfairly implied during closing argument that appellant had been using marijuana and getting away with it for 18 years. By such tactics, this evidence became a focal point and was used almost exclusively by trial counsel to impeach appellant's military character evidence and to transform the case from a use of marijuana into 18 years of use and coverups.

This is precisely the situation that Mil. R.Evid. 403 is designed to prevent and is a classic example of when the "probative value [of evidence] is substantially outweighed by the danger of unfair prejudice." It is "unduly" prejudicial under the circumstances of this case to enlarge an 18–year–old one-time use of marijuana into an 18–year pattern of lying and continuous marijuana use. It is

also "unduly" prejudicial to imply from that that appellant used marijuana for 18 years. *United States v. Abel*, 469 U.S. 45, 55, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984).

Although the military judge gave the proper limiting instructions to the members concerning both the 18–year–old use and the false official statements, they could not overcome the damaging effect of such highly prejudicial evidence. Therefore, we hold that the military judge erred to the substantial prejudice of appellant in admitting the 18–year–old evidence.

The decision of the United States Air Force Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.