UNITED STATES, Appellee,

v.

Verdell GRAHAM, Jr., Master Sergeant,
U.S. Air Force, Appellant.

No. 97–0617.
Crim.App. No. 32283.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 3, 1998.

Decided March 9, 1999.

Sullivan, J., filed dissenting opinion in which Crawford, J., joined.

Crawford, J., filed dissenting opinion.

COX, C.J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. SULLIVAN, J., filed a dissenting opinion, in which CRAWFORD, J., joined. CRAWFORD, J., filed a dissenting opinion.

For Appellant: *Major Ray T. Blank, Jr.* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Captain Steven D. Dubriske* (argued); *Colonel Brenda J. Hollis* and *Major J. Robert Cantrall* (on brief); *Lieutenant Colonel Michael J. Breslin, Major LeEllen Coacher,* and *Captain Mitchel Neurock.*

Chief Judge COX delivered the opinion of the Court.

I

Contrary to his pleas, appellant was convicted at a general court-martial, by members, of one specification of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. This charge was the result of a urinalysis test taken at Seymour Johnson AFB, North Carolina, in 1995. He was sentenced to a bad-conduct discharge, confinement for 6 months, and reduction to E–4.

The Court of Criminal Appeals affirmed these results. 46 MJ 583 (1997).

On appeal, appellant challenges the admission of evidence that he tested positive for marijuana several years prior to the present case. 48 MJ 337 (1997). We agree that the military judge abused his discretion in admitting the evidence, and we reverse.

At appellant's trial on this charge, the prosecution was permitted to cross-examine him about a positive urinalysis for marijuana that occurred *almost 4 years prior to trial,* in England, in 1991. The military judge allowed the questioning to rebut appellant's testimony that "there is no way I would knowingly use marijuana" and that, after he was notified about the 1995 urinalysis, he was "shocked, upset, and flabbergasted."

As a result of the 1991 urinalysis, appellant was tried by a court-martial. There he presented an innocent-ingestion defense, and he was acquitted.[1]

The question whether the Government would be allowed to cross-examine appellant about his prior acquittal was litigated *in camera.* *See* Art. 39(a), UCMJ, 10 USC § 839(a). The military judge ruled that he would allow one question on cross-examination of appellant regarding whether he had previously had a positive urinalysis result. The judge ruled that this question was direct rebuttal to appellant's testimony in the instant trial. In his ruling, the judge specifically prohibited the prosecution from inquiring about whether appellant had been *prosecuted* for the previous urinalysis and about the results of that trial. The military judge granted the Government's motion in part, ruling:

> The fact that he [appellant] was previously court-martialed balancing under 403, [*sic* ] I'm not going to let in that he was ... allow the Government to ask whether he was previously court-martialed. The fact that the accused has testified, "there is no way I would knowingly use marijuana" and

---

1. According to proffers made at the instant court-martial, appellant was stationed in England during the time frame of the previous urinalysis and court-martial. It was suggested that a British national may have laced a birthday cake with marijuana. The record of the prior court-martial was a summarized record; therefore, no further information about the previous court-martial was included in the record for this case.

after he was notified about the positive test, he was "shocked, upset, and flabbergasted," the . . . this testimony in and of itself, if I am not to allow the Government to ask questions in that area, would it mislead the jurors? I believe that the prosecution can ask the following question: "Did you test previously positive for marijuana, for THC?" And I will instruct the jurors that just because the accused tested positive previously on one occasion, that's no indication that he knowingly used on that occasion or on this occasion, and that the jurors may consider [this information] for the limited purpose as to what the likelihood would be that the accused would test positive twice for unknowing ingesting of marijuana and for the likelihood that the accused was flabbergasted when he was informed that he tested positive at this time, and for no other purpose. But I'm not going to let you go into any other facts and circumstances.

Regarding application of Mil.R.Evid. 403, Manual for Courts–Martial, United States (1995 ed.), the judge further ruled:

Well, I do have to determine whether it's unfairly prejudicial to the accused. And to re-litigate the previous court-martial, I believe would be unfairly prejudicial to the accused.

The prosecution then asked appellant whether, on a previous occasion, his urine had tested positive for marijuana metabolites. Appellant responded affirmatively and spontaneously added that he had been acquitted of any misconduct. Immediately following this cross-examination, the military judge gave the following instruction to the members regarding the use of the evidence:

You're instructed that just because the accused had a positive urinalysis test for THC metabolites of marijuana previously on one occasion, is [sic] no indication that he knowingly used on that occasion or on this occasion. You may consider it for the limited purpose as to what the likelihood would be that the accused would test positive twice for unknowingly ingesting marijuana and for the likelihood that the accused was flabbergasted when he

was informed that he had tested positive this time.

The military judge reiterated this instruction during his findings instructions. None of the court members had any questions about the meaning of this instruction.

We, however, do not agree that a prior positive urinalysis is logically relevant to an accused's surprise at testing positive 4 years later. Lack of surprise might have proved something; surprise did not. Nor does a prior, ostensibly innocent, ingestion rebut a claim that a subsequent ingestion was also innocent.

II

As the relevance rule explains:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Mil.R.Evid. 401; see Mil.R.Evid. 402. Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice." Mil.R.Evid. 403. Admissibility of relevant evidence is also tempered by Mil.R.Evid. 404(b), which provides that "[e]vidence of other crimes . . . is not admissible to prove the character of a person in order to show action in conformity therewith."

■ In a trilogy of cases, United States v. Harper, 22 MJ 157 (1986); United States v. Murphy, 23 MJ 310 (1987); and United States v. Ford, 23 MJ 331 (1987), we established the rules by which factfinders in courts-martial may infer from the presence of a controlled substance in a urine sample that a servicemember knowingly and wrongfully used the substance. There are three steps to the process. First, the seizure of the urine sample must comport with law. See Mil.R.Evid. 311–316. Second, the laboratory results must be admissible, requiring proof of a chain of custody of the sample, i.e., proof that proper procedures were utilized. And last, but importantly, there must be expert testimony or other evidence in the record providing a rational basis for inferring

that the substance was knowingly used and that the use was wrongful.

■ Applying these principles to the facts of this case, we first look to the claimed logical relevance of the proffered evidence. The military judge ruled that the evidence was relevant to show "what the likelihood would be that the accused would test positive twice for unknowingly ingesting marijuana and for the likelihood that the accused was flabbergasted when he was informed that he had tested positive." On the other hand, the judge ruled that the evidence was not relevant to prove "that he knowingly used on that occasion or on this occasion."

We disagree with the military judge's logic. First, there is no evidence of record that tends to prove or disprove what the "likelihood" is for a military member to test positive twice in a 4–year period because of innocent ingestion. We have no clue from this record, nor from our experience, what the statistical probability is for "innocent ingestion" to occur, nor can we say what the percentage might be for laboratory error, errors in the chain of custody, or other like errors. These questions are of such concern that we have repeatedly required more than a mere paper case to prove knowing and wrongful ingestion. *See, e.g., United States v. Murphy, supra.*

Second, although one might argue that, if a person had tested positive 4 years ago, he would not be "flabbergasted" at a second positive test, human experience would seem to dictate a contrary result. In fact, we agree with the point made by trial defense counsel during motions argument, that if appellant had innocently ingested the drug on the prior occasion and then had turned up positive on the present test, he would be even more outraged, flabbergasted, and angry than he was on the first occasion. Indeed, that is precisely how many an innocent person might react when being accused of a crime.

Last, none of the rules established by *Harper, Murphy,* and *Ford,* about the use of positive urinalysis results to prove knowing and wrongful use of marijuana, were followed as to the 4–year–old test result.

■ We reject outright the positions taken by our dissenting colleagues for several reasons. First, the dissenters conclude that the proffered evidence enjoys probative value to rebut an innocent-ingestion defense. The military judge, however, expressly instructed the members that the prior test result provided "no indication that he knowingly used [marijuana] on that occasion or on this occasion." Because of this ruling, the dissenters are attempting to save this conviction by fitting this evidence into a theory not advanced at trial.

Moreover, it was the military judge who specifically prohibited the prosecution from introducing information concerning the "brownie" defense or any other details of the first trial. Under Mil.R.Evid. 401 and 402, for the fact of appellant's assertion of the "brownie" defense at his first trial to be relevant to the members' determination of a fact "of consequence" at the second trial, it would have been necessary for the military judge to admit the details of the entire first trial. However, the military judge properly rejected this evidence to prevent relitigation of the merits of the first trial—the proverbial trial within a trial—and to minimize the danger of confusion of the issues. *See* Mil. R.Evid. 403. There is no fact of consequence that a positive result on a previous urinalysis, if resurrected at this trial, could rebut.

The dissent also relies on the "fact" that appellant was using an innocent-ingestion defense at this trial. 50 MJ at 61 n.1. That is simply not the case. While the Air Force court recognized that the "thrust" of appellant's defense included "unknowing ingestion," certainly appellant's defense was broader than just this possibility. In essence, his defense was a general denial of the charge. Here, appellant did not allege any specific instance when marijuana was placed in food or drink that he subsequently ingested.

Appellant's defense was, thus, a "good soldier" defense, not one of "innocent ingestion." The Air Force court recognized this distinction when it said:

At this trial, appellant initially gave notice pursuant to R.C.M. 701(b)(2)[, Manual, *supra,*] of an intent to present an innocent ingestion defense. Later, possibly recognizing the portent of such a strategy in view of its previous employment, appellant specifically eschewed that defense at trial, putting on instead a "good soldier" [sic] defense. We use the word "instead" advisedly, because the unmistakable thrust of appellant's trial theory was that he would not and did not *knowingly* take marijuana.[2]

46 MJ at 584.

■ Next, the dissenters' view that evidence of an unlawful substance in an accused's urine on one occasion can be used to prove that he *knowingly* used it on a later occasion is contrary to Mil.R.Evid. 404(b), unless the evidence is logically relevant and meets some exception to that rule. Prior-use evidence is classic "bad character" evidence. Our rule, Mil.R.Evid. 404(b), as well as its federal civilian counterpart, Fed.R.Evid. 404(b), establish a general prohibition against using evidence of prior "bad" conduct to demonstrate that a person has acted "in conformity therewith," subject to specific exceptions. The evidence here fits none of these recognized exceptions.

Furthermore, as a leading text has noted, before admitting evidence under one of the Mil.R.Evid. 404(b) exceptions, the "trial judge must be certain to make the prosecution state exactly what issue it is trying to prove in order to see whether the evidence is probative, how probative it is, and whether it should be admitted in light of the other evidence in the case, and the ever present danger of unfair prejudice." S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 531 (4th ed.1997). Here, the cursory explanation offered by trial counsel, and the confusing and contradictory instructions offered by the military judge, underscore the failure to develop a clear relationship between the prior test result and the issues at stake in the present

case. Thus, even if the evidence had some marginally probative value to rebut the idea that appellant was "flabbergasted" by his positive result, the danger of unfair prejudice far outweighed the limited probative value.

■ Finally, as we have discussed herein, the Government laid no foundation for admissibility of the evidence. There was no chain-of-custody evidence; no proof that the prior test had been performed in accordance with acceptable scientific principles; and no expert to explain to the members how they might conclude that the test proved appellant knowingly used the drug 4 years earlier.

Our dissenting colleagues seem to forget, once again, that our service personnel, who are called upon to defend our Constitution with their very lives, are sometimes subject to searches and seizures of their bodies, without probable cause, for evidence of a crime. We should zealously guard the uses of these results and hold the Government to the highest standards of proof required by law.

Based upon all of the foregoing, any relevance associated with the prior test was far outweighed by the prejudice that flowed from its admission. Furthermore, admission of the evidence materially prejudiced appellant. Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

SULLIVAN, Judge, with whom CRAWFORD, Judge, joins (dissenting):

Appellant used the unknowing-ingestion defense in a court-martial for unlawful drug use some 4 years prior to his present military prosecution and he was acquitted. When appellant was being tried in the case at bar,

2. We apparently view the "brownie defense" more narrowly than does Judge Sullivan. Literally, it was derived from the explanation that "someone put marijuana in the brownies." *See* *United States v. Bond,* 46 MJ 86 (1997) (appellant speculated that his cup of beer was laced with cocaine by drug users he was investigating).

he once again used this defense,[1] and to bolster this defense, he took the stand and substantially asserted that he never knowingly used marijuana, and that he was "shocked, upset, [and] flabbergasted" to have received a positive-urinalysis result.[2] After hearing arguments out of the presence of the jury, the judge allowed the prosecution, on cross-examination, *to rebut* this testimony with one question only: whether Graham had a prior positive-urinalysis result? [3]

1. In my view appellant clearly attempted to raise the defense of unknowing ingestion in this case. He testified as follows:

Q: Sergeant Graham, did you do this? (Held the charge sheet up.)
A: No, Sir.
Q: Sergeant Graham, the Government is trying to say that the byproducts of marijuana are in your urine. *Do you know how that happened?*
A: *No, Sir.*
Q: Was the substance tested your urine?
A: After it left my sight, Sir, I have no idea where it went, *and there's no way I would knowingly use marijuana.*
Q: Sergeant Graham, was your urine positive for the ... for marijuana?
A: I'm being told that, Sir. I have no way of knowing.
Q: Sergeant Graham, how were you notified by the lab saying your sample was positive?
A: I was called by the first sergeant over to the orderly room and taken on a trip down to the OSI office.
Q: Now, as you were driving down to the OSI building, did the chief tell you what was going on?
A: No, Sir.
Q: Did you think you were in trouble at the time?
A: No, Sir, because I was an observer during this sweep and stuff, and I thought it might have had something to do with that.
Q: *Now when were you eventually notified?*
A: *After we got down to the OSI building and the OSI notified me.*
Q: *And what was your reaction to that?*
A: *I was shocked, upset, flabbergasted.*
(Emphasis added.)

Defense counsel also argued this defense to the members:

Even if you can rely upon Brooks Lab to say some sample we got from Seymour Johnson turned out positive for THC, even if you can rely on the chain back to Seymour Johnson, even if you rely on it back through UPS back to first class mail, however that happened, all the way back to Master Sergeant Graham's body, ask yourself what evidence do we have of a knowing use. You have none. There was no one person that came in here and [s]aid, I saw Master Sergeant Graham use marijuana. There's not one piece of evidence that was seized and shown to you, no drug paraphernalia, no drug, nothing. There was not one person that's heard Sergeant Graham talk about using marijuana. *You heard testimony that* the OSI was involved in this case. Using your common sense and your knowledge of the ways of the world, you know how the OSI is[.]

* * *

All I ask you to do is take into account that the OSI was involved in this case and that there are still no witnesses, no evidence seized, that were presented here today to show that there was a knowing use. *What the evidence does say about knowingness of this use, you can look to Chief Porter.* He told you Sergeant Graham wasn't nervous. He was cooperative. He didn't hesitate. He went in there and gave a sample. He was in a good mood. He was one of the first ones to give a sample. And ... Dr. Frederick told you that the creatinine level for this sample that purports to be Master Sergeant Graham's is a normal sample. He also told you a person can force fluid to get their level down, and that's [sic] you do no notice testing. That's why you tell people, get over to the base gym and give a sample. He told you that in thirty to forty minutes, you can see the difference in the creatinine level. In two hours, you can see a significant difference. Well, how much notice did Master Sergeant Graham have. Not thirty to forty minutes, not two hours. Four hours. Four hours in which he could have force[d] fluid if he would have thought that he had knowingly used marijuana that he had to cover it. The bottom line is Master Sergeant Graham came in here today. We presented evidence of his outstanding military character. He put his integrity on the line. *He looked you in the eye and said, "I did not knowingly use marijuana." "I do not know how this happened." If you look at it objectively, why would he knowingly use marijuana.* At the time of this incident, he was retirement eligible. He has a wife and son. He owns a home. The bottom line is, there's no evidence to support a finding beyond a reasonable doubt of knowing use.
(Emphasis added.)

2. In appellant's initial court-martial for drug use, he defended himself on the basis that someone put marijuana in cake he had eaten. At his second court-martial, he served notice of an innocent-ingestion defense that his wife cooked marijuana in brownies which he ate "without knowledge of their contents." His trial testimony, in the case at bar, again denied knowing drug use but without mentioning the brownies, *i.e.,* the "brownie defense without the brownies." (*See* n. 1, *supra.*)

3. It was appellant who first informed the members of his prior court-martial results in the following colloquy:

To specifically address the majority opinion, I note that it attempts to exclude this rebuttal evidence of appellant's positive urinalysis, which occurred some 4 years before the charged offenses, under two rules of evidence. It first suggests that such evidence was not logically relevant to rebut his trial testimony suggesting a defense of unknowing ingestion. *See* Mil.R.Evid. 401. Then it cites this Court's decision in *United States v. Murphy*, 23 MJ 310 (1987), for the proposition that evidence of a prior positive-drug test alone, without expert testimony and proper instructions, is not legally admissible under Mil.R.Evid. 403. I disagree for the reasons stated below.

On the Mil.R.Evid. 401 question, I initially note that relevance cannot be determined without regard to the purpose for which the challenged evidence was offered. Appellant's defense of unknowing ingestion was supported by his assertion that "there's no way [he] would knowingly use marijuana," and his assertion that he was "shocked, upset, [and] flabbergasted" at the 1995 positive-urinalysis result. The evidence of an earlier positive urinalysis (1991) was offered to rebut this defense testimony. *See United States v. Banks*, 36 MJ 150, 166 (CMA 1992).

Rebuttal is a well-recognized evidentiary purpose. Judge Wiss, writing in *Banks*, succinctly defined this evidentiary purpose as follows:

> We have stated in a whole series of cases: "It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Hallum*, 31 MJ 254, 255 (CMA 1990); *United States v. Cleveland*, 29 MJ 361, 363 (CMA 1990); *United States v. Wirth*, 18 MJ 214, 218 (CMA 1984); *United States v. Strong*, 17 MJ 263, 266 (CMA 1984), all quoting or citing *United States v. Shaw*, 9 USCMA 267, 271, 26 CMR 47, 51

(1958)(Ferguson, J., dissenting). The scope of rebuttal is defined by evidence introduced by the other party. *See Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Baldwin*, 17 USCMA 72, 37 CMR 336 (1967); *United States v. Sellers*, 12 USCMA 262, 30 CMR 262 (1961).

36 MJ at 166. Quite simply, the 401 question before us is whether the positive-urinalysis evidence is relevant "to explain, repel, counteract or disprove the evidence introduced by" appellant. I think it is.

In my view, the above-noted question was fair *rebuttal* to the defense of unknowing ingestion which appellant was attempting to plant in the jury's mind. *See United States v. Holmes*, 39 MJ 176, 180 (CMA 1994); *United States v. Spata*, 34 MJ 284–86 (CMA 1992). First, his broad and unequivocal testimonial denial of knowing drug use ("no way I would") reasonably suggested appellant's total non-involvement with illegal drugs. The prosecution was entitled to correct this misimpression by showing that appellant twice, not once, tested positive for drugs during his implied drug-free life. *See United States v. Joyner*, 29 MJ 209, 212 (CMA 1989); *United States v. Trimper*, 28 MJ 460, 467(CMA), *cert. denied*, 493 U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989). The fact of a prior positive-drug test provided a more complete picture of appellant's drug history and undermined his credibility with respect to his denial of the current charges. After all, the jury was entitled to know that appellant was in reality asserting that he was struck by lightning twice. *See United States v. Walker*, 42 MJ 67, 73 (1995)("The doctrine of chances and the experience of conduct tell us that accident and inadvertence are rare and casual; so that the recurrence of a similar act tends to persuade us that it is not to

Q: Overall, Sergeant Graham, would you agree with me that the drug testing program is reliable?
A: It's not a hundred percent. It's reliable, but it's not a hundred percent.
Q: Now, Sergeant Graham, isn't it true that on one occasion in the past, a sample of your urine was correctly tested or was

tested correctly, detecting ingestion of marijuana by you?
A: Yes, *but I was found not guilty.*
(Emphasis added.) The military judge's ruling permitted the defense to admit evidence to show additional circumstances surrounding that test. Thus the only mention of a prior court-martial was first brought up by appellant.

be explained as inadvertent or accidental." (Citation omitted)); *see also United States v. Graham,* 46 MJ 583, 586 (A.F.Ct.Crim.App.1997)(multiple-"dope fairy"-visits theory).

Second, evidence of the 1991 positive urinalysis was also admitted to rebut appellant's testimony that he was "shocked, upset, [and] flabbergasted" at the 1995 positive urinalysis. His testimony concerning his highly agitated mental state after he received his 1995 positive-urinalysis result reasonably suggested that he never tested positive for drugs before and his current positive-test result should be attributed to unknowing ingestion. *See* 1A Wigmore, *Evidence* 174 (Tillers rev.1983)(consciousness-of-innocence evidence). The Government was entitled to attempt to contradict this bolstering evidence by showing that he had tested positive before and, therefore, his testimony of extreme agitation was exaggerated or false. *See also United States v. Trimper, supra.* Accordingly, this evidence was logically relevant to circumstantially counter appellant's testimony concerning his flustered mental state and its implications concerning his innocent-ingestion defense.

Turning to the Mil.R.Evid. 403 question, the majority's rationale is also unpersuasive. First of all, appellant did not make this particular objection at trial or on appeal and, therefore, it should more properly be considered waived under Mil.R.Evid. 103. In any event, the challenged evidence was not offered to prove appellant's guilt beyond a reasonable doubt of the uncharged misconduct, as in the *Murphy* line of cases. Instead, it was offered to show the uncharged misconduct probably occurred. *United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989), sets the standard for admission of proof of uncharged misconduct, a far lesser standard than at issue in *Murphy.* Finally, in view of the restricted nature and use of the challenged evidence in this case and the judge's limiting instructions, I must reject the majority's rationale and uphold the judge's discretionary decision. *Cf. United*

*States v. Holmes,* 39 MJ 176, 182 (CMA 1994)(impermissible argument prejudicial despite proper instruction on limited use of evidence).

At the end of the day, this case comes down to a question of fair rebuttal. Appellant's testimony gave the jury the false impression that he had no involvement whatsoever with illegal drugs and he had not tested positive for drugs before. The prosecution was allowed to bring in other evidence which prevented the jury from being *misled* in determining the truth of this case. Appellant's own testimony opened the door to this government evidence, and basic fairness dictated that the jury be allowed to hear it. *See* RCM 913(c)(1)(C); *see also Joyner, supra* at 212 (rebuttal evidence not used to show guilt of charged offense but to correct erroneous implications of accused's testimony).

CRAWFORD, Judge (dissenting):

The Government tried appellant for drug use nearly 4 years before the charges arose in this case. During that trial, he employed the "innocent ingestion" defense * and was acquitted. The majority, by their ruling today, would allow appellant to argue the innocent ingestion defense again in his second trial, while keeping the members in the dark about his first trial.

The unknowing ingestion of a drug is a defense to drug-use offenses. However, the fact that appellant was tried for a drug offense and acquitted at one trial was relevant to his second trial for a drug offense because, during the second trial, he again testified that he was "flabbergasted" that his urinalysis was positive. Both the Supreme Court, *Dowling v. United States,* 493 U.S. 342, 343–44, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), and this Court, *United States v. Cuellar,* 27 MJ 50, *cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989), have held that the Government may present evidence of an accused's alleged prior bad acts without violating the Double Jeopardy Clause or the Due Process Clause of the Constitution, even if

---

* RCM 701(b)(2), Manual for Courts–Martial, United States (1995 ed.); *see also United States v.* *Fisiorek,* 43 MJ 244, 249 (1995) (Crawford, J., dissenting).

the accused was acquitted of offenses arising from those alleged acts.

Dowling was charged with armed robbery of a bank. 493 U.S. at 344, 110 S.Ct. 668. At trial, the judge admitted evidence that Dowling had committed burglary 2 weeks after the bank robbery. *Id.* at 344–45, 110 S.Ct. 668. Testimony to this effect was admitted at the bank robbery trial, even though Dowling had been acquitted of the burglary. *Id.* at 345, 110 S.Ct. 668. This testimony indicated that appellant had a connection to another suspect in the bank robbery; that a similar get-away car was involved in both events; that appellant had previously worn a similar ski mask and carried a similar handgun while committing a bad act; and that the prior crime was in the same locality. *Id.* at 344–45, 110 S.Ct. 668.

The Third Circuit held that a jury should not be permitted to consider the evidence of a bad act if there had been an acquittal. Nonetheless, it affirmed the defendant's conviction by holding that the error was harmless. 855 F.2d 114, 122–24 (1988).

The Supreme Court held that Dowling had the burden to demonstrate that his acquittal represented a jury determination that he was not the person who entered the home. 493 U.S. at 352, 110 S.Ct. 668. The Court rejected Dowling's argument that evidence relating to an acquittal is "inherently unreliable." It noted that the defendant had an opportunity to refute this evidence but did not. *Id.* at 353, 110 S.Ct. 668.

Likewise, this Court, anticipating *Dowling,* held in *United States v. Cuellar, supra,* that collateral estoppel did not prohibit admission of prior bad acts, even if the accused was acquitted of offenses arising from those alleged acts in a different jurisdiction. Cuellar was charged with molesting a 10–year–old female in 1983. 27 MJ at 51–52. The judge allowed prosecutors to introduce evidence that Cuellar had molested four other females between 1980 and 1982, even though he was acquitted of these charges. *Id.* at 52–53. This Court held that evidence about acts resulting in the prior acquittals was not barred by collateral estoppel. *Id.* at 54–55. It also ruled that not allowing the defense,

upon its request, to introduce evidence that the accused had been acquitted in the prior proceedings was error. *Id.* at 55–56.

A third case, *United States v. Rocha,* 553 F.2d 615 (1977), also supports admission of appellant's first positive urinalysis. Rocha was arrested for transporting 231 pounds of marijuana in a van across the Mexican border. *Id.* Rocha had been charged on a prior occasion with transportation of marijuana in a truck. *Id.* at 615–16. At the prior trial, he testified that he believed "he was moving a load of furniture" and "denied knowing the contents of the truck." *Id.* He was acquitted. *Id.* at 616.

At the later trial, the Government introduced evidence of Rocha's prior arrest for transporting marijuana in a truck. *Id.* Rocha explained the circumstances surrounding the first arrest and that the police found marijuana in the truck. The Ninth Circuit held that admission of evidence surrounding the first acquittal was relevant and probative in the later trial. *Id.*

All three of these cases demonstrate the doctrine of chance, *i.e.,* what are the odds of the same set of facts occurring more than once to the same person? The Department of Defense has set the cut-off level to determine a positive reading for marijuana at 300 nanograms per milliliter. This cut-off level is set high to discount the possibility of unknowing ingestion and to demonstrate a reasonable likelihood that the user would note the physical and psychological effects of the drug. In the case at bar, the members, who are well aware of the random urinalysis program and the high cutoff levels, should have the opportunity to determine appellant's credibility and whether appellant would mistakenly test positive for drugs twice within 4 years.

Under an abuse-of-discretion standard of review for an evidentiary issue, we should not reverse a military judge unless an appellant shows that the evidence admitted "clearly had no bearing upon any of the issues involved." *United States v. Marin–Cifuentes,* 866 F.2d 988, 996 (8th Cir.1989). Time and similarity of conduct are important factors to consider when determining admis-

sibility of prior bad acts. But, the key here is to apply a reasonableness standard to the issue in the case. Evidence of prior positive-urinalysis results was admissible because it was more probative than prejudicial under Mil.R.Evid. 403, Manual for Courts–Martial, United States (1995 ed.). Thus, the prior positive-urinalysis results should have been admitted as substantive evidence of appellant's knowing ingestion of marijuana.