UNITED STATES, Appellee,

v.

Kevin M. ROBERTS, Boatswain's Mate
First Class, U.S. Navy, Appellant.

No. 98–1039.
Crim.App. No. 97–0767.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 19, 1999.

Decided March 14, 2000.

COX, S.J., delivered the opinion of the Court in which CRAWFORD, C.J., GIERKE, and EFFRON, JJ., joined. SULLIVAN, J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Lieutenant Dale O. Harris*, USNR (argued).

For Appellee: *Lieutenant James E. Grimes*, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, USN (on brief).

Senior Judge COX delivered the opinion of the Court.

Appellant was convicted of one specification of unauthorized absence and one specification of wrongful use of methamphetamine.[1] The granted issue concerns the correctness of the military judge's decision to receive, on the merits, evidence that appellant had tested positive for drugs in a previous urinalysis, a test conducted some 6 months before the instant court-martial. 51 MJ 319. We are satisfied that, even if error occurred, appellant could not have been prejudiced under the circumstances, Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a), and we affirm.

1. Violations of Articles 86 and 112a, Uniform Code of Military Justice, 10 USC §§ 886 and 912a. Appellant was sentenced to partial forfeitures for 2 months, reduction to E–l, confinement for 2 months, and a bad-conduct discharge. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed in an unpublished opinion.

Appellant was a boatswain's mate first class (E–6) with almost 18 years of naval service. The unauthorized-absence charge arose in this manner: Appellant reported for duty at his new duty station during the first week of October 1996. He was given leave until October 16, 1996, in order to take care of personal business. He overstayed his leave until November 7, 1996, when members of his new organization located him at his off-post quarters, apprehended him, and returned him to the Naval Station. Appellant pleaded guilty to this unauthorized absence (UA).

The wrongful-use-of-methamphetamine charge arose in this manner: Upon his return from UA status, appellant was ordered to provide a supervised urine specimen for the purpose of drug-evaluation, apparently as a matter of routine military inspection.[2] The completed urinalysis revealed that appellant had ingested methamphetamine in sufficient quantities to warrant a positive result.

Appellant pleaded not guilty to the drug charge, contending that his ingestion of the drugs was unknowing and innocent. The defense theory was that an unknown person ("a guy named Jason") had slipped appellant drugs along with some food at a party at appellant's house 2 days before he was apprehended. Appellant claimed that he noticed the effects of the drugs almost immediately. He could not, however, meaningfully identify anyone who attended the alleged party, and he provided no corroboration of either the party or the alleged drugging event. Further, appellant did not report being involuntarily drugged to the officials who apprehended him. The court members convicted appellant of the charge.

The evidence of appellant's prior positive urinalysis, the subject of this appeal, arose in the following manner: Some 6 months before appellant's court-martial, while appellant was assigned to another unit, he allegedly tested positive during a urinalysis.[3] At the nonjudicial punishment (NJP) that resulted, appellant claimed that someone had put drugs in his food. Although the officer offering NJP imposed punishment, the admiral who reviewed the punishment set it aside, apparently on the basis of a break in chain of custody. Accordingly, at the instant court-martial, the Government offered not the NJP itself, which had been set aside, but it offered proof of the fact of the positive urinalysis[4] and of appellant's assertion that someone had put the drugs in his food on that occasion. *See Dowling v. United States*, 493 U.S. 342, 349, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof"). *See also United States v. Griggs*, 51 MJ 418, 419 (1999).

The Government offered evidence of the prior urinalysis results under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States ("[o]ther crimes, wrongs, or acts"), on the theory that it proved knowledge and absence of mistake. The Government was prepared to prove the results, in rebuttal, by extrinsic evidence and cross-examination of appellant. Regarding appellant's prior claim that someone had put drugs in his food, the Government sought to elicit that evidence from appellant himself during cross-examination under Mil.R.Evid. 608(b) (use of specific instances of conduct of witness for the purpose of attacking credibility). The Government's theory was that appellant's prior claim of being unknowingly drugged impeached his present claim of innocent ingestion.

After appellant testified during the defense case-in-chief (wherein he asserted his claim of innocent ingestion), the military judge ruled that appellant's prior assertion of innocent ingestion regarding the dismissed NJP

---

**2.** There is no issue before us concerning the legitimacy of this inspection or the admissibility of the results of the evaluation.

**3.** The facts and circumstances giving rise to the prior urinalysis are not of record. Appellant did

not, however, protest that it occurred under circumstances amounting to an unlawful search and seizure.

**4.** The Government was prepared to prove that the supposed break in the chain of custody did not, in fact, occur.

was admissible as impeachment under Mil. R.Evid. 608(b). In addition, the judge ruled that, under Mil.R.Evid. 404(b), both the prior assertion and the prior urinalysis were admissible as "a common scheme or plan in that the defendant has asserted that this was an innocent ingestion—a remarkably similar circumstance, the assertion is he used the same story is the basis for that [sic]."

On the ensuing cross-examination by the prosecution, appellant admitted that, 6 months earlier, he had tested positive for cocaine and that he had asserted at the time that someone "put something" in his food. The Government did not, therefore, endeavor to prove either of these matters by extrinsic evidence.

In *United States v. Graham*, 50 MJ 56 (1999), we were recently confronted with a somewhat similar urinalysis case. Graham, on direct examination, testified, "[T]here is no way I would knowingly use marijuana," and he testified that, upon being informed that he had tested positive, he was "shocked, upset, and flabbergasted." *Id.* at 57. The Government, thereafter, without further showing, was permitted to introduce evidence, as rebuttal, that Graham had tested positive in a urinalysis conducted almost 4 years earlier. In a divided opinion, the majority of this Court concluded that the Government's mere assertion that innocent ingestion cannot occur twice was insufficient to prove or disprove the "likelihood" of such events. Further, the majority could discern no logical basis for the implication that a person who had been set up previously would not be "shocked, upset, and flabbergasted" upon learning that he had been set up again. *Id.* at 59. Accordingly, the majority ruled that the evidence, as proffered, lacked probativeness and that the military judge erred in receiving it. Mil.R.Evid. 401–03. *Id.* at 60.

Passing over superficial distinctions, both *Graham* and the instant case are variations on a lightening-doesn't-strike-twice theory. In both cases, essentially, it was argued that the *fact* of a first claim of innocent ingestion

disproves the *innocence* of a subsequent claim. Technically, however, there may be some differences between these cases in that, here, relevance was not predicated on a theory of rebuttal of the accused's trial assertions, as it was in *Graham*.

■ The remaining circumstances of this case, however, make resolution of these distinctions unnecessary and, hence, advisory. Indeed, the evidence in this case is such that, even if the cross-examination of appellant was improper, he could not have been prejudiced under any standard.

In addition to the urinalysis results relating to the instant charges, the court members had before them the evidence surrounding appellant's apprehension. Succinctly put, after numerous prior attempts to locate appellant at his off-base quarters, a party including appellant's division officer and leading chief petty officer (LCPO) was dispatched to his quarters to try again to find him. Initially, appellant did not answer the door or otherwise respond to the loud and persistent calling and pounding by the party. Eventually, he came to the door, however. He was described as looking "[s]hocked," "disheveled," and like an "emotional wreck." He twice refused to return to base with the party.

■ On board the Naval Station later that day, appellant admitted to his LCPO that "he did some coke." [5] Several weeks later, after being fully advised of his rights and waiving them, appellant made a written statement in his own hand. Therein he described falling into a depression after learning of his wife's infidelity. He reported "losing track of time and caring little of my own well being." He denied "abus[ing]" alcohol and did not "recollect using the drug." He did "recall an acquaintance saying, 'Here, this will cheer you up.'" Appellant "only assumed it was something else (cocaine) [sic]." He stated, "When asked by my Chief had I ingested anything illegal[,] I admitted that I had. But was unclear of when."

---

**5.** Whether this statement was preceded by warnings was not developed in the record. Further, we note that appellant's LCPO had less time in service than appellant, and the circumstances surrounding the admission were not obviously inquisitorial. *Cf. United States v. Duga*, 10 MJ 206 (CMA 1981). Hence, there is no issue of plain error.

The foregoing two admissions were received without objection at trial; no issue as to their admissibility or propriety was taken before the Court of Criminal Appeals; and no such issue has been raised here.

In addition, appellant's trial testimony was impeached by his acknowledgment of having been convicted of 3 specifications of making false official statements, by a general court-martial convened about 7 years earlier.

Under all these circumstances, we are satisfied that the military judge's receipt of the challenged evidence was harmless.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and dissenting in part):

I completely agree with my learned Brother's opinion except for the part where he attempts to distinguish this case from *United States v. Graham*, 50 MJ 56 (1999). Save for some damaging admissions by Roberts prior to trial, this case is, in fact, very similar to *Graham*. Contrary to the majority's implication, the existence of the prior use of the innocent-ingestion defense did come out in a rebuttal mode. The evidence at issue surfaced during the cross-examination of Roberts after he raised the innocent-ingestion defense to the present charge. Confronting the assertions of a criminal defendant with impeaching facts from his past is perhaps the most personal and direct form of rebuttal. In this respect, my dissenting opinion from *Graham* does appear to me to be relevant. Nevertheless, I can also join in the affirmance of this case based on other circumstances outlined by the majority. Accordingly, I am willing to join their affirmance of this case on the theory that *if* this evidence was error, it was harmless in this case.